Filed 7/30/13  In re D.J. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

In re D.J. et al., Persons Coming Under the Juvenile Court Law.

| | |
|---|---|
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E058030 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J239358 & J239359) |
| v. | OPINION |
| Z.J., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cheryl C. Kersey, Judge.  Affirmed.

Michele Anne Cella, under appointment by the Court of Appeal, for Defendant and Appellant Z.J.

Julie E. Braden, under appointment by the Court of Appeal, for Defendant and Appellant A.V.

1

Jean-Rene Basle, County Counsel, and Jamila Bayati, Deputy County Counsel, for

Plaintiff and Respondent.

I

INTRODUCTION[1]

Father, joined by mother, appeals from the denial of father's section 388 petition

and the order of the juvenile court terminating parental rights to their two sons after 20

months of dependency proceedings. We conclude there was no abuse of discretion in

denying a hearing on father's section 388 petition and denying the petition. We affirm.

II

FACTUAL AND PROCEDURAL BACKGROUND

*A. Detention*

The subjects of this appeal are two young boys, Du.J. and Da.J., who were born 10

months apart in May 2010 and March 2011, when mother was 18 years old.

In June 2011, San Bernardino County Children and Family Services (CFS) filed

an original 300 petition alleging failure to protect because the parents had exposed their

sons to domestic violence and the parents had a history of drug and alcohol abuse.

Although the children were not severely neglected or emotionally abused, CFS was

concerned about domestic violence, substance abuse, and general neglect. Father resisted

seeking medical care for Da.J., who was a few months old and underweight, and was

born with laryngomalacia, affecting breathing and causing stridor (wheezing).

---

[1] All statutory references are to the Welfare and Institutions Code section unless
stated otherwise.

Eventually, paramedics were called to transport the baby to the hospital and surgery was conducted with mother's consent the next day. After surgery, Da.J.'s breathing improved and his weight increased. Du.J. appeared to be developmentally appropriate.

Parents planned to live with relatives. Father was working as a security guard. Mother was receiving public assistance. Mother struggled to assert herself against father and to focus on the well-being of the children. She admitted father had hit her several times. CFS observed that the parents argued constantly. Father admitted to smoking medical marijuana for a back injury. The parents denied abusing drugs or alcohol and agreed to submit to random drug tests. At the detention hearing, the court found the children should be removed.

## B. Jurisdiction/Disposition

In July 2011, CFS recommended the children be maintained with mother with maintenance services and father receive reunification services.

Mother was born in 1992. Mother had completed the 11th grade but never worked. She had been diagnosed with ADD but was not taking medication. Father was born in 1987. Father had completed the 10th grade and worked as a security guard. He had been diagnosed with ADHD and anxiety and he used medical marijuana. Father had a 2001 juvenile offense for threatening a school employee; a 2007 misdemeanor conviction for possession of concentrated cannabis (Health & Saf. Code, § 11357, subd. (a)); and a charge in February 2011 for battery on a spouse. (Pen. Code, § 243, subd. (e)(1).) Both parents seem to have been the victims of child abuse.

3

The parents had been the subject of previous referrals involving the children in July 2010 and March 2011. In June 2011, there was ongoing discord between the parents with mother expressing anxiety. Mother accused father of being intoxicated on the day Da.J. was hospitalized. Mother was living with her parents and using marijuana to cope with her depression. Both parents tested positive for marijuana but tried to rationalize their use of alcohol and marijuana as recreational. As of July 6, 2011, the parents had stopped living together and father was not behaving cooperatively. At one point father had refused to give mother the children's medical cards. He took the welfare money mother received and threw $150 out the car window at her. Mother had no means of transportation and relied on father who had refused to help her.

Du.J. seemed bonded to mother. CFS deemed the prognosis for reunification with mother to be good but complicated by mother's dishonesty, her relationship with father, her emotional state, and her use of marijuana to mask depression and stress. Father displayed lack of respect, immaturity, anger, selfishness, and lack of self-awareness.

An amended dependency petition was filed on July 20, 2011, alleging father had failed to protect the children by refusing to transport them for medical treatment and mother had failed to protect them because of her relationship with father. CFS described how Da.J. suffered from diarrhea and pervasive severe diaper rash, causing reddened testicles and a swollen penis. Father had thwarted mother's efforts to seek medical treatment. On July 15, 2013, Da.J. was treated in the emergency room for bronchitis.

Both parents also displayed mental health problems. Mother admitted to struggling with anxiety, stress, depression, and confusion and to using marijuana to cope.

4

Mother was also continuing to contact father and to hold out hope for them being together.

Father's problems were ongoing. His mother said father was extremely angry and violent and blamed others for his problems and she had obtained a restraining order against him. On July 19, 2011, father came to mother's sister's home while intoxicated and refused to leave. He accused mother of cheating, and confronted mother violently, shoving her to the ground. The police were called and father acted suicidal. Father was hospitalized for suicidal ideation.

Consequently, the children had been placed with their paternal great-grandparents (GGP). In a box of clothing, the GGPs discovered a glass pipe with methamphetamine residue that mother had used. At the jurisdictional and dispositional hearing on July 21, 2011, the court found the children should be detained out of the parents' home and be placed with the paternal GGPs in Orange County. Immediately, the paternal great-grandmother became overwhelmed and other relatives were deemed not qualified or available for placement. The children were placed in foster care.

In August 2011, CFS reported Du.J. was in excellent health and on target developmentally. Da.J.'s breathing had improved and his weight had increased since his discharge from the hospital. Mother was visiting the children in July and August 2011. On August 17, 2011, father had his first visit with the children in a month. The prognosis for reunification was guarded.

A court-ordered mediation was conducted in August 2011. Father agreed to participate in counseling, substance abuse treatment, parenting and domestic violence

5

classes.  At the hearing on August 23, 2011, the court removed the children from parental custody and ordered reunification services and visitation twice weekly for the parents.

*C.  Six-Month Status Review*

In February 2012, CFS commented that the parents loved their children and wanted them returned but neither parent was capable of caring for or protecting them because of substance abuse and domestic violence issues.  The parents had relapsed and not participated in services.  Father was arrested on January 15, 2012, for disorderly conduct, after which he continued drinking.  (Pen. Code, § 647, subd. (f).)  The parents were both unemployed and living separately with their family members.  The children were happy, healthy, and developmentally sound.  The parents had visitation twice a week for one hour.  The prognosis for reunification was poor.

Various parental relatives had been assessed for placement.  The paternal grandmother (PGM) only wanted the children if father was helping her or the children were being adopted.  Father had stolen her car which had been impounded.

At the six-month review hearing on February 23, 2012, the court ordered the parents continue to receive reunification services.

*D.  12-Month Review*

In August 2012, CFS reported the parents had not completed their case plan and they were inconsistent about visiting the children.  The parents still had severe substance abuse and domestic violence issues and were incapable of parenting the children.  Father told the social worker to move forward with adoption and to stop wasting time.  He planned to move to Arizona to find a job and start over.  The boys were happy and

6

healthy but displayed some developmental delays. The foster parents were interested in adoption. The PGM was still ambivalent about placement.

In a mediation on September 20, 2012, both parents agreed to termination of services and a permanent plan of adoption. The court ordered termination of services.

*E. Section 366.26*

In January 2013, the boys had been living with the foster parents since September 2011. They were happy and healthy with some developmental delays. Father had not been in contact. Mother visited once a week for an hour. She loved the children but the children were not bonded to her and favored the foster mother. The children were suitable for adoption and the foster family was enthusiastic about adopting them.

On January 22, 2013, father filed a section 388 petition, seeking reinstatement of reunification services. Father asserted he had attended individual counseling and completed programs in domestic violence, anger management, and parenting. The individual therapy had involved 11 sessions between February and May 2012 and a 12th session in December 2012. His progress was erratic.

CFS responded that father had not shown a change of circumstances. Father had not visited his children since June 2012. He had moved to Arizona in July 2012 and had not completed his case plan in August 2012. In January 2013, father had been sober for one month and had his first visit with the children after 28 weeks of no contact. Father was living with his mother and unemployed. At the hearing on January 29, 2013, father claimed he had agreed to adoption because he believed his mother would be adopting them.

7

The juvenile court denied father's request for a hearing on the petition. The court selected adoption as the permanent plan and terminated parental rights.

III

DENIAL OF HEARING ON THE SECTION 388 PETITION

Father argues the court should have granted him a hearing on his section 388 petition. The court has the discretion to deny a section 388 petition hearing when the moving party has not met his threshold burden of proof. (*In re Jasmon 0.* (1994) 8 Cal.4th 398, 415; *In re Stephanie M.* (1994) 7 Cal.4th 295, 318; *In re Amber M.* (2002) 103 Cal.App.4th 681, 685-686.)

Section 388 provides, in relevant part, as follows: "(a)(l) Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court . . . . The petition shall be verified . . . and shall set forth in concise language any change of circumstance or new evidence that is alleged to require the change of order . . . . [¶] . . . [¶] (d) If it appears that the best interests of the child . . . may be promoted by the proposed change of order . . . the court shall order that a hearing be held . . . ." (§ 388, subds. (a) and (d).)

A section 388 petition must be "liberally construed in favor of granting a hearing to consider the parent's request," subject to a prima facie showing to trigger the right to a full hearing. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309-310; *In re Anthony W.* (2001) 87 Cal.App.4th 246, 250; Cal. Rules of Court, rule 5.570(a) & (h).) "'There are two parts to the prima facie showing: The parent must demonstrate (1) a genuine change of

8

circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the children.'" (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079, quoting *Anthony W.,* at p. 250.) Thus, a prima facie showing is made if the liberally construed allegations of the petition show both changed circumstances and that the best interests of the child may be promoted by petitioner's proposed change of order. (*In re Aljamie D.* (2000) 84 Cal.App.4th 424, 431-432; § 388, subd. (d).)

Father contends the dependency court deprived him of his right to a hearing on his section 388 petition, in which he requested reunification services. However, due process is a flexible concept that depends upon the circumstances and a balancing of various facts. (*In re E.S.* (2011) 196 Cal.App.4th 1329, 1340; *In re Jeanette V.* (1998) 68 Cal.App.4th 811, 817.) Here the juvenile court initially granted a hearing. Thereafter, the court permitted arguments about whether a full evidentiary hearing was warranted. As in *In re Zachary G.* (1999) 77 Cal.App.4th 799, 805, father was permitted to argue his section 388 petition, which was sufficient due process, considering the weakness of the section 388 petition.

Additionally, father did not show that his circumstances had changed and he failed to demonstrate that reinstating reunification services served the best interests of the children. Because father did not make a prima facie showing supporting his petition, the court did not abuse its discretion in denying a full hearing. The parent requesting the change of order through a section 388 petition has the burden of establishing by a preponderance of the evidence that the change is justified. (*In re Michael B.* (1992) 8 Cal.App.4th 1698.) "A petition which alleges merely changing circumstances and would

9

mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47, citing *In re Edward H.* (1996) 43 Cal.App.4th 584, 594.)

This case began in June 2011 when father refused to seek medical care for Da.J. Father admitted drinking, using marijuana, and arguing with mother. Father did not have a stable residence or employment. In July 2011, he confronted mother while angry and intoxicated. In January 2012, father was arrested. In September 2012, father had left California and agreed to let the boys be adopted while he made a fresh start in Arizona. Father did not see his sons from June 2012 until January 2013, when father had made minimal progress on his case plan. Nevertheless, father now argues that the lower court erred in denying a section 388 hearing because he had completed his services.

In actuality, father did not complete his services because he did not benefit from them. (*In re Derrick S.* (2007) 156 Cal.App.4th 436, 445-450.) Father's therapist stated that father made "erratic progress" and expressed "ambivalence" about being able to care for the boys and recommended more therapy.

Additionally, father had only commenced substance abuse outpatient services in January 2013. He could offer no proof of successful completion of an outpatient program after only one month of sobriety. Accordingly, Father did not prove "changing circumstances," let alone changed circumstances. (*In re Edward H., supra,* 43 Cal.App.4th at p. 594; § 388.) A parent who loses custody because he failed to complete his plan is unlikely to "ever show a sufficient change of circumstances to warrant

10

granting a section 388 motion. . . . It is in the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform." (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9.) When a parent engages in services, but does not benefit and relapses despite extensive efforts by others to assist, this is telling of his resistance to change. (See *In re Casey D., supra,* 70 Cal.App.4th at pp. 47-49 [holding that the trial court did not abuse its discretion in denying mother's section 388 petition, where mother had been sober only four months, had an extensive drug history, and history of relapse].)

The present case is similar to *In re Anthony W., supra*, 87 Cal.App.4th at page 246, in which the appellate court held that it was not an abuse of discretion to deny a section 388 hearing when mother's assertions supporting the petition that she completed her reunification plan and visited the children were conclusory. Her petition was not supported by drug test results, certificates of completion, or names of counselors, evincing substantive progress. (*Anthony W.,* at pp. 250-252.)

Father also did not demonstrate that it served the boys' best interests for the court to grant Father more services. There was no showing the children could be safely returned to father or that there existed a strong parental bond. In evaluating the best interest prong of a section 388 petition, the court should consider: "(l) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to *both* parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*In re Kimberly F., supra*, 56 Cal.App.4th at p. 532.) Considering these factors, a full hearing was properly denied. (*In*

11

*re Jasmon 0., supra*, 8 Cal.4th at pp. 414-415; *In re Zachary G., supra,* 77 Cal.App.4th at pp. 806-808.)

The first prong of the *Kimberly F.* test is "the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem." (*In re Kimberly F., supra,* 56 Cal.App.4th at p. 532.) As detailed above, the court found true allegations relating to the parents' substance abuse, domestic violence, mother's depression, and father's anger management issues—all serious considerations. The parents made minimal progress before the review hearings in 2012. Father's issues persisted because, as the court stated, father did not meaningfully and regularly participate in his plan, and make substantive progress.

In considering the second prong of *Kimberly F.*—the strength of relative bonds between the children to the parents and caretakers—the boys had been placed with the foster family since September 2011 when they were six months and 16 months old. The foster parents were their parental figures. The boys were bonded to them and the other children. Even though the boys had fun visiting father, he was not a parental figure.

In *In re Zachary G., supra*, 77 Cal.App.4th 799, the mother filed a section 388 petition to circumvent adoption. The juvenile court heard argument and permitted mother to file a bonding study but then denied a hearing and denied the petition because it did not provide expert evidence that it was in Zachary's best interests to remove him from fit caretakers, returning him to the mother's custody, and the mother remained a risk. (*Zachary G.,* at pp. 805-808.) The mother's evidence of a bond and of parenting capacity was not sufficient to overcome the best interest in stability for Zachary. Here

father's petition also lacked evidence showing it was in the boys' best interest to be removed from a stable home. The juvenile court had discretion to deny a hearing on the petition.

The third prong of *Kimberly F.* involves considering "the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*In re Kimberly F., supra*, 56 Cal.App.4th at p. 532.) Father minimized his long absence from the boys' life by arguing at the section 388 hearing that he had "only" missed four months of visits with the boys. Father still did not understand the need to make his children a priority. Father's mental health issues, violence, and parental neglect were apparently exacerbated by substance abuse and could not be ameliorated by one month of sobriety. Father cannot rely on *In re Daijah T.* (2000) 83 Cal.App.4th 666, in which the appellate court reversed termination of parental rights, finding that the lower court erred by denying the mother a section 388 hearing when three of mother's five children had already been returned to her and she filed her petition five days after her other two children were placed in a concurrent planning home. (*Id.* at pp. 673-675.) Here father's contact with the boys was unsafe. The boys were also bonded with their foster parents, who had raised them for 16 months.

Father also cites authority that family preservation is one of the primary goals in dependencies. (*In re William B.* (2008) 163 Cal.App.4th 1220.) But once reunification services are terminated, the focus shifts to the child's need for permanence and stability. (*In re Marilyn H., supra*, 5 Cal.4th at p. 309.) Childhood does not wait for parents to become adequate. (*Sara M. v. Superior* Court (2005) 36 Cal.4th 998, 1016.) It does not

serve the needs of a dependent child "to be hostage to a fugitive parent, particularly one with an 'abysmal record of failure at reunification.'" (*In re Derrick S., supra*, 156 Cal.App.4th at p. 449, citing *In re Aryanna C.* (2005) 132 Cal.App.4th 1234, 1241.)

IV

DISPOSITION

We uphold the findings and orders of the juvenile court so the children can achieve permanence and stability.  We affirm.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

HOLLENHORST
J.

14