[No. A116871. First Dist., Div. Two. Oct. 25, 2007.]

In re DERRICK S., a Person Coming Under the Juvenile Court Law.
CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES
BUREAU, Plaintiff and Respondent, v.
DERRICK S., Objector and Appellant.

438

COUNSEL

Laureen A. Bethards, under appointment by the Court of Appeal, for Objector and Appellant.

Silvano B. Marchesi, County Counsel, Valerie Ranche, Assistant County Counsel, and Catherine Beller, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**RICHMAN, J.**—Dependent Derrick S. appeals from the order made at the six-month review when the juvenile court denied his motion that his mother not receive additional months of reunification services. Derrick supported his motion with *In re Aryanna C.* (2005) 132 Cal.App.4th 1234 [34 Cal.Rptr.3d 288] (*Aryanna C.*), where the Court of Appeal for the Third District held that a juvenile court has the discretion to terminate reunification services at any point after ordering them for a dependent minor who was *under* the age of three years when removed from parental custody. Because Derrick was *over* the age of three when he was removed from his mother's custody, the court believed the reasoning of *Aryanna C.* did not apply, and that the court was required by Welfare and Institutions Code section 361.5 and California Rules of Court former rule 1460[1] to grant the mother the additional six months of reunification services. Indeed, the court expressly stated that it had no discretion not to order the additional services.

We conclude that *Aryanna C.* is soundly reasoned and that its holding is equally applicable to dependents over the age of three. No statute or rule of court restricts a juvenile court's discretion to order less than the maximum amount of reunification services when confronted with a parent who is unwilling or unable to benefit from additional reunification services, or if for other reasons the likelihood of reunifying the family is faint. In light of this conclusion, we reverse.

## BACKGROUND

Derrick's mother, Stephanie S., had herself been a dependent due to the neglect of her mother, Derrick's grandmother. Stephanie's dependency was

---

[1] Statutory references are to the Welfare and Institutions Code. Effective January 1, 2007, California Rules of Court, former rule 1460 was renumbered as rule 5.170, without changing its substance.

ended in 1997 because her mother failed to complete her reunification plan, and because Stephanie had become a runaway.

Derrick was born the following year. Shortly after he was born, Derrick was the subject of a dependency commenced because Stephanie was unable to care for him adequately. The dependency was terminated in 2000 after Stephanie completed her reunification plan.

In early 2006, the Contra Costa County Children and Family Services Bureau (Bureau) received information that Derrick, then seven years of age, was not attending school and was not receiving adequate food and dental care. Derrick was living with Stephanie and her mother. The relationship between the two women was rocky; both had substance abuse problems. The Bureau was informally attempting to improve matters with a voluntary family maintenance plan.

But it was the dual facts of Stephanie's arrest and her leaving Derrick in the care of his grandmother that led the Bureau, in March 2006, to file a petition to the effect that Derrick qualified as a dependent child. Derrick was promptly detained at a hearing Stephanie did not attend.

At the jurisdictional hearing held on May 23, 2006, Stephanie submitted on a single amended allegation that she "failed to provide adequate dental treatment and adequate housing for the child and has failed to ensure that the child attend school regularly" within the meaning of section 300, subdivision (b). The juvenile court sustained this allegation. The remaining allegations were "dismissed with the understanding" that Stephanie would undertake 45 days of constant drug testing, and if she tested positive she would enter a "more significant treatment" regimen.

On June 30, 2006, a week before the scheduled dispositional hearing, the Bureau sent a letter advising the court that as of that date it "has not received any drug testing results" from Stephanie. The Bureau also confirmed that Stephanie "settled her criminal matter and [had] been ordered to complete a six-month residential treatment program to be monitored by the Contra Costa County Probation Department." The Bureau recommended that Stephanie receive reunification services according to a case plan that had been modified "to conform with the requirements of the Probation Department."

Stephanie was not present at the July 7, 2006 dispositional hearing. Her counsel explained to the court that many, but not all, of her missed drug tests were due to "her being required to appear in criminal court" until "the case settled on June 8th." After brief discussion of the proposed case plan, the court approved it. The plan required Stephanie to complete the residential

treatment program and followup monitoring. Stephanie was ordered to meet with the social worker every month. She was granted supervised visitation with Derrick up to twice a week. Derrick was declared a dependent child.

The six-month review was initially scheduled for late November 2006, but it was continued to January 3, 2007. The Bureau prepared a status report dated November 21, 2006. Its conclusions were mixed. Stephanie had not entered, much less completed, a residential drug treatment program. The social worker reported that Stephanie "has had fairly regular phone calls with Derrick, but her visitation with the child has been problematic. [Stephanie] is not easily contacted by telephone, as she does not have her own phone and has to rely on others to relay messages to her through their phones. [Stephanie] has also not presented any evidence to the Bureau regarding her participation in any of the services listed on her case plan."

The social worker was being euphemistic. As she went on to explain: "According to . . . the Concord Police Department, [Stephanie] has a no-bail, felony warrant for arrest for non-compliance with the conditions of her probation . . . . [Stephanie] has not been testing regularly for probation, nor communicating regularly with her probation office. The Concord Police Department is actively seeking [Stephanie] at this time for arrest."

As for Derrick reuniting with his mother, the social worker concluded that he "would not be safe in her home at this time due to the [current] instability, substance abuse and illegal activity." On the other hand, "Derrick appears to be stable in his current location and has bonded with the members of the foster family," who "are interested in the adoption or guardianship of Derrick should his mother fail to regain custody of him."

Nevertheless, the Bureau was guardedly optimistic about an ultimate reunification. It recommended additional reunification services, but it warned that even if this recommendation were adopted by the court, Stephanie "must realize that she must make adequate progress during the next six months of Family Reunification Services in order to regain custody of her son or the Bureau will request that a hearing is scheduled to terminate her parental rights to allow Derrick to be adopted."

In anticipation of the scheduled November hearing, Derrick forwarded to the court a two-page "Review Brief" consisting of a long excerpt from *Aryanna C.* and requesting that "an early W&I 366.26 hearing be set as quickly as possible pursuant to the holding" of that decision.

On December 1, 2006, the court received another communication from the social worker reporting that "the Bureau received an anonymous call from a

concerned and admittedly fearful acquaintance of the mother," who disclosed that Stephanie planned to kidnap Derrick and take him to Florida. The acquaintance also mentioned that Stephanie "is currently driving a stolen car without any license plates and uses her sister's identity when stopped by law enforcement. [¶] Although these are allegations, the Bureau sees the mother's current known criminal activity as high risk and the mother has not yet presented herself to the Bureau to dispute these allegations. Therefore, the Bureau is requesting that supervised visitation between Derrick and his mother [be] terminated at this time."

Stephanie was not present when the six-month review was held on January 3, 2007. The social worker responsible for the case plan until January 1 testified that since she wrote the November 21, 2006 status report Stephanie had not visited Derrick or provided any proof of compliance with the case plan. Around December 19, 2006, Stephanie had a telephone conversation with Derrick and another with the social worker in which she (Stephanie) stated "she was going to turn herself in at the beginning of the year."

The court then heard argument, beginning with that from Derrick's counsel, who argued that *Aryanna C.* was "right on point. [¶] Mom has done nothing. She has a warrant outstanding. The child deserves to move toward permanence at a faster pace than the 12-month [review hearing]. This court is empowered to do so. I ask you to do so." Counsel for the Bureau stated that it "is not opposing this motion."

Counsel for Stephanie argued that *Aryanna C.* was distinguishable because the dependent there was a "newborn" who "had no relationship with the parent." By contrast, Derrick was "clearly . . . attached to his mother." Stephanie's counsel concluded that "I think the Court needs to give this mother an opportunity to use her full 12 months which the legislature has provided that a parent of an older child is entitled to. It's entirely possible that if mother turns herself in, she would get into residential treatment and would be able to complete her plan within the 12-month period."

Counsel for Derrick responded, and concluded the argument by urging the court to "terminate services" and "set the [366.26] [termination] hearing at this point." He did so by disputing "that there is a relationship that needs to be maintained because . . . the mom is doing—if not nothing, the very minimal, and relationships can be detrimental as well as positive." Derrick is "in a safe place. That's not going to change. But mother hasn't proven that she deserves the extra time. She hasn't done anything except for maybe promised she's going to turn herself in. [¶] . . . I disagree with [Stephanie's

counsel] that mother would finish her plan to the point that it would be likely that the child could be returned within an 18-month period."[2]

After a recess to review authorities, the court ruled as follows: "It's clear that mother has done little, if anything—nothing would be a great way to characterize her efforts to date, and the issue before me is whether or not mother should receive five more months of services. [¶] Mother, at the present time, is apparently at large. There is a bench warrant out on her. She has not surrendered. My bailiff did check the local facility, and she has not turned herself in as promised. [¶] . . . Well, clearly, there's been no substantial compliance with the case plan. . . ."

"If this was [sic] an under three matter, we wouldn't even be having this discussion. *Aryanna C.* cited by counsel is a case where we have a minor who is under three. So the issue is whether I can legally make a finding, and . . . terminate services and set a [section 366.26] hearing. [¶] In researching this matter in chambers, after reviewing points and authorities and also Rules of Court, I think not allowing mother the additional time is somewhat problematic. And let me tell you the statutory [sic] basis that I'm concerned about, and I am relying on. Rule 1460 . . . indicates the Court may set a hearing under Section 366.26 within [120] days if, and this is the section that deals with the six-month hearing, the child was removed under Section 300(g), and the Court finds by clear and convincing evidence that the parents' whereabouts are still unknown, which is not the situation here.

"The Court finds by clear and convincing evidence that the parents have not had contact with the child for six months, which is not the situation here, and the Court finds by clear and convincing evidence that the parent has been convicted of a felony, indicating parental unfitness, or the parent is deceased, or the child was under the age of three.

"I think I'm statutorily precluded, under these circumstances, so I am going to essentially find that the additional six months—and in this case, five months of services, is legally required. Not that I want to make these findings, but I don't want to create an appellate issue where one does not exist. [¶] . . . [¶] . . . [I]t's the Court's decision to continue six more months of services . . . . I think the Rules of Court are quite explicit . . . so I can't set a [366.26] [termination hearing]."

The court then ordered the Bureau to provide Stephanie with additional reunification services and scheduled a 12-month review. Derrick filed a timely notice of appeal from the order.

---

[2] As will be seen, counsel was referring to the statutory principle that reunification services are usually limited to no more than 18 months. (See § 361.5, subd. (a), quoted, *post*.)

## DISCUSSION

Derrick is the sole appellant. He presents one issue for our review. As he frames that issue in his brief: "A parent of a child over the age of three at the time of removal is not entitled to a minimum of twelve months of reunification services; rather, the length of services is within the sound discretion of the court, which may terminate such services at the six-month status review hearing if there has been no substantial compliance with the case plan." Derrick asks this court to extend the principle of *Aryanna C.* from dependents under the age of three to dependents over the age of three. Stephanie has not filed a brief. Although the Bureau in its brief attempts to defend the juvenile court's decision, it tacitly aligns itself with Derrick, arguing that it "would welcome a ruling that the trial court has the discretion to terminate family reunification services prior to twelve months when the parent(s) are not complying with or participating in the case plan." For the reasons we now set out, we conclude Derrick is correct.

■ We begin with confirmation of the fundamental principle applicable here, a principle that cannot be repeated too often: "It is difficult, if not impossible, to exaggerate the importance of reunification in the dependency system. With but few exceptions, whenever a minor is removed from parental custody, the juvenile court is required to provide services to the parent for the purpose of facilitating reunification of the family." (*In re Luke L.* (1996) 44 Cal.App.4th 670, 678 [52 Cal.Rptr.2d 53]; accord, *In re Michael G.* (1998) 63 Cal.App.4th 700, 714 [74 Cal.Rptr.2d 642].) The statutory authority governing the provision of reunification services is section 361.5. Its subdivision (a) reflects the different treatment afforded to minors above and below the age of three: "[W]henever a child is removed from a parent's . . . custody, the juvenile court shall order the social worker to provide child welfare services to the child and the child's mother . . . . Child welfare services, when provided, shall be provided as follows: [¶] (1) For a child who, on the date of initial removal from the physical custody of his or her parent . . . , was three years of age or older, court-ordered services shall not exceed a period of 12 months from the date the child entered foster care . . . . [¶] (2) For a child who, on the date of initial removal from the physical custody of his or her parent . . . , was under the age of three years, court-ordered services shall not exceed a period of six months from the date the child entered foster care. [¶] . . . [¶] Notwithstanding paragraphs (1) [and] (2) . . . , court-ordered services may be extended up to a maximum time period not to exceed 18 months after the date the child was originally removed from physical custody of his or her parent . . . ." (§ 361.5, subd. (a).)

■ This statutory language establishes a dual-track approach based on the dependent minor's age. If the child is under three, the default position is six

months of reunification services. If the child is over three, the default position is 12 months. For both categories, the outer limit is 18 months.[3] But none of these time periods is immutable.

That follows from a principle noted by the court in *Aryanna C.*— "reunification services constitute a benefit; there is no constitutional ' "entitlement" ' to those services." (*Aryanna C., supra,* 132 Cal.App.4th 1234, 1242; accord, *In re Joshua M.* (1998) 66 Cal.App.4th 458, 476 [78 Cal.Rptr.2d 110]; *In re Christina A.* (1989) 213 Cal.App.3d 1073, 1078–1079 [261 Cal.Rptr. 903].) Put even more bluntly, there is no absolute right to receive the maximum amount of statutorily fixed services in any and all circumstances.

This is made clear beyond doubt by subdivision (b) of section 361.5, which specifies no fewer than 15 situations in which the juvenile court is not required to order *any* reunification services.[4] The statutory scheme for dependencies allows for reunifications services only " 'in most cases.' " (*In re Zacharia D., supra,* 6 Cal.4th 435, 446; see *In re Marilyn H.* (1993) 5 Cal.4th 295, 308 [19 Cal.Rptr.2d 544, 851 P.2d 826].) But for dependent children over the age of three, "Nowhere is it provided that a *minimum* of 12 months of sevices is required. To the contrary, the emphasis throughout the statutes is upon setting outside limits to the length of time a child may be kept in foster care before a permanent plan is established." (*In re David H.* (1995) 33 Cal.App.4th 368, 388 [39 Cal.Rptr.2d 313]; see *Denny H. v. Superior Court* (2005) 131 Cal.App.4th 1501, 1510 [33 Cal.Rptr.3d 89] [citing *In re David H.*].) Moreover, since 2000 it has been established that a motion pursuant to section 388 may be used to ask the juvenile court to terminate a parent's reunification services prior to expiration of the 12-month period. (*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 877–879 [101 Cal.Rptr.2d 187] [upholding termination after four months of services].)[5]

---

[3] Even the 18-month limit is not inflexible: juvenile courts have discretion in a limited number of circumstances where enforcement of the deadline may be relaxed. (See *In re Zacharia D.* (1993) 6 Cal.4th 435, 446, fn. 12 [24 Cal.Rptr.2d 751, 862 P.2d 751] [noting that "Under section 366.3, if a juvenile court does not terminate parental rights, but 'orders a permanent plan of adoption or legal guardianship pursuant to Section 366.25 or 366.26,' further reunification services may be provided. (§ 366.3, subds. (a), (b) & (c).)"]; *Renee J. v. Superior Court* (2002) 96 Cal.App.4th 1450, 1465–1466 [118 Cal.Rptr.2d 118] [noting decisions allowing review hearing to be continued beyond 18 months to make good patent inaccuracies of case plan or services offered].)

[4] Among those situations is that the court has already "ordered termination of reunification services for any siblings or half-siblings of the child because the parent . . . failed to reunify with the sibling or half-sibling" (§ 361.5, subd. (b)(10)) or has terminated the parent's right as to the sibling or half sibling (*id.,* subd. (b)(11)). In the latter situation there is, of course, the probability that the parent received reunification services.

[5] It has already been held that due process is not offended if 12 months of services are not provided before parental rights are terminated. (*In re David H., supra,* 33 Cal.App.4th 368 at

Also pertinent is the language of subdivision (e) of section 366.21: "At the review hearing held six months after the initial dispositional hearing, the court shall order the return of the child to the physical custody of his or her parent . . . unless the court finds . . . that the return of the child . . . would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. . . . The failure of the parent . . . to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental. In making its determination, the court . . . shall consider the efforts or progress, or both, demonstrated by the parent . . . and the extent to which he or she availed himself or herself to services provided."

After dealing with two special situations, section 366.21, subdivision (e) goes on: "In all other cases, the court shall direct that any reunification services previously ordered shall continue to be offered to the parent . . . pursuant to the time periods set forth in subdivision (a) of Section 361.5, provided that the court may modify the terms and conditions of those services. [¶] If the child is not returned to his or her parent . . . , the court shall determine whether reasonable services that were designed to aid the parent . . . have been provided or offered to the parent . . . . The court shall order that those services be initiated, continued, or *terminated*." (Italics added.)

In *Aryanna C.* the father of two dependents appealed from the termination of reunification services at an interim review hearing held less than six months after the dispositional hearing. The details of the hearing are given as follows: "Appellant was present but in custody pending criminal charges. According to the social worker's report, appellant had failed to comply with the requirements of his reunification plan. He had tested twice for drug abuse, both times submitting positive tests for marijuana and methamphetamine. Moreover, appellant failed to attend all but one scheduled visit with the minors." (*Aryanna C., supra*, 132 Cal.App.4th 1234, 1238.) The *Aryanna C.* court distilled the issue and its holding as follows:

"Presented with appellant's abysmal record of failure at reunification thus far, the juvenile court had little choice but to find appellant had not complied with his reunification plan and was unlikely to do so in the near future. The issue then is: what are the court's options at that point? Appellant argues that, pursuant to the dispositional order granting him services, he was 'entitled to receive a minimum six months of services before the juvenile court could consider terminating those services.'

pp. 388–389 ["a minimum of 12 months of reunification services" is not "an indispensable requirement of due process"; "parents may not complain if a hearing under section 366.26 is ordered after an abbreviated period of reunification services"].)

"We disagree. Reading sections 361.5, subdivision (a), and 366.21, subdivision (e), together, we conclude that the juvenile court has the discretion to terminate the reunification services of a parent at *any time after it has ordered them*, depending on the circumstances presented. Our determination is supported by the express language of section 361.5, subdivision (a)(2), applicable to this case, which provides that services 'may not exceed' six months; it does not constitute a grant of services for a six month period. Thus, the 'maximum period of reunification services is generally six months' when the child is under three years old. . . .

"Our conclusion is consistent with the purposes underlying the dependency system. Where, as the record shows in this case, the likelihood of reunification is extremely low [citation], a continuation of the reunification period would waste scarce resources and delay permanency for dependent minors. Our interpretation of the pertinent statutes is consistent with the legislative intent behind the statutory scheme—'to balance efforts to reunify the family with the child's need for stability.' [Citation.]

"The importance of reunification services in the dependency system cannot be gainsaid. The law favors reunification whenever possible. [Citation.] To achieve that goal, ordinarily a parent must be granted reasonable reunification services. [Citation.] But reunification services constitute a benefit; there is no constitutional ' "entitlement" ' to those services. [Citation.]

"Under most circumstances, it is reasonable to expect a parent will receive at least six months of reunification services. . . . [W]e would look with skepticism at a juvenile court order ending services after only a few days or weeks had passed. We hold only that a parent is not *entitled* to a prescribed minimum period of services. It remains within the discretion of the juvenile court to determine whether continued services are in the best interests of the minor, or whether those services should be ended at some point before six months have elapsed." (*Aryanna C., supra,* 132 Cal.App.4th 1234, 1241–1243, first italics added, fn. omitted.)

If it was a "waste" of scarce resources to offer reunification services to the incarcerated parent in *Aryanna C.,* how much more so is it to order services for a parent in Stephanie's situation—on the run from law enforcement, in only sporadic contact by telephone, and, as the caseworker put it, who had failed to take advantage of "any of the services" arranged by the Bureau during the previous six months. That parent would be obviously unable to keep a regular schedule of appointments with the caseworker and others working for reunification. Even more obvious is the patent inability of that parent to comply with the requirement that she meet weekly with her caseworker and complete a six-month residential treatment program even if

she were to be granted five months of additional services. To conclude that the Legislature contemplated such a situation, much less commanded it, is simply unacceptable. The presumption is against such a pointless construction of any statute. We would not lightly conclude that the Legislature has mandated that reunification services be provided to an empty chair. (See, e.g., *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 744 [110 Cal.Rptr.2d 828, 28 P.3d 876] [court should avoid construction of statute that will produce " 'mischief or absurdity' "]; *Flannery v. Prentice* (2001) 26 Cal.4th 572, 578 [110 Cal.Rptr.2d 809, 28 P.3d 860] ["We avoid any construction that would produce absurd consequences."].)

We therefore agree with the reasoning of *Aryanna C.* as it pertains to the provision of reunification services to a dependent's parent. Just as the *Aryanna C.* court construed the "shall not exceed a period of six months" language of section 361.5, subdivision (a)(2) as not precluding a shorter period of time for reunification, so do we construe the "shall not exceed a period of 12 months" language of section 361.5, subdivision (a)(1). "Exceed" sets an outside limit. It does not command it. (*Aryanna C.*, *supra*, 132 Cal.App.4th 1234, 1242; *In re David H.*, *supra*, 33 Cal.App.4th 368, 388.)

This conclusion is fortified by looking at the language of the other statute mentioned in *Aryanna C.*—section 366.21. Subdivision (e) of section 366.21 provides that at a six-month review hearing a juvenile court "shall direct that any reunification services previously ordered shall continue to be offered to the parent . . . pursuant to the time periods set forth in subdivision (a) of Section 361.5," yet it also allows that the court can "direct that any reunification services previously ordered" may be "terminated." These seemingly conflicting directives are harmonized by the *Aryanna C.* formula: 12 months of services will ordinarily be provided for a parent of a dependent child over the age of three, but services may be discontinued in the rare case when "the likelihood of reunification is," for whatever reason, "extremely low." (*Aryanna C.*, *supra*, 132 Cal.App.4th 1234, 1242.) Without this option, the "terminated" language would be deprived of meaning, a result courts strive to avoid. (*People v. Cole* (2006) 38 Cal.4th 964, 980–981 [44 Cal.Rptr.3d 261, 135 P.3d 669]; *Longshore v. County of Ventura* (1979) 25 Cal.3d 14, 24 [157 Cal.Rptr. 706, 598 P.2d 866].) But following the *Aryanna C.* approach will retain for a juvenile court the "discretion to choose between the options given it by statute." (*Fontana Unified School Dist. v. Burman* (1988) 45 Cal.3d 208, 221 [246 Cal.Rptr. 733, 753 P.2d 689].)

Finally, it would ill serve the needs of the dependent child to be hostage to a fugitive parent, particularly one with an "abysmal record of failure at reunification." (*Aryanna C., supra,* 132 Cal.App.4th 1234, 1241.) This is no rhetorical flourish. The court here flatly stated that "nothing would be a great way to characterize [Stephanie's] efforts" to comply with her case plan and thus "[address] the underlying reasons that brought her the attention" of the Bureau. A principal objective of the juvenile court is to provide "an expedited proceeding to resolve the child's status without further delay." (*In re Malinda S.* (1990) 51 Cal.3d 368, 384 [272 Cal.Rptr. 787, 795 P.2d 1244].) That objective is hardly advanced by ordering services for an absentee parent. As our Supreme Court recently noted, sometimes " '[c]hildhood does not wait for the parent to become adequate.' " (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1016 [32 Cal.Rptr.3d 89, 116 P.3d 550].)

■ For each and all of the above reasons, we hold that section 361.5, subdivision (a)(1) does not establish an iron rule that the parent of a dependent child who is over the age of three is entitled to, and must always receive, 12 months of reunification services. Accordingly, a juvenile court conducting a dependency for a child above the age of three retains the discretion to terminate the provision of reunification services before expiration of the 12-month period.

■ California Rules of Court, rule 5.710 does not alter our conclusion. The portion of the rule apparently relied upon by the juvenile court is set out in the footnote, *post.*[6] Although the rule might bear the construction given it by the court if considered in isolation, the rule cannot be divorced from the statutes it is designed to effectuate. (See *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 800 [85 Cal.Rptr.2d 844, 978 P.2d 2]; *Perdue v. Crocker*

---

[6] To judge from the portion of California Rules of Court, former rule 1460 quoted by the court, it was referring to what is now rule 5.710(f)(1), which provides in pertinent part:

"(f) Conduct of [six-month review] hearing (§ 366.21)

"If the court does not return custody of the child:

"(1) The court may set a hearing under section 366.26 within 120 days if:

"(A) The child was removed under section 300(g) and the court finds by clear and convincing evidence that the parent's whereabouts are still unknown;

"(B) The court finds by clear and convincing evidence that the parent has not had contact with the child for 6 months;

"(C) The court finds by clear and convincing evidence that the parent has been convicted of a felony indicating parental unfitness;

"(D) The parent is deceased; or

"(E) The child was under the age of three when initially removed and the court finds by clear and convincing evidence that the parent has failed to participate regularly and make substantive progress in any court-ordered treatment plan, unless the court finds a substantial

*National Bank* (1985) 38 Cal.3d 913, 941, fn. 38 [216 Cal.Rptr. 345, 702 P.2d 503]; Cal. Rules of Court, rule 5.501(c).) Rule 5.710 is meant to implement section 366.21 in the conduct of six-month reviews. The issue of reunification services, governed by sections 361.5 and 366.21, is ordinarily a standard topic at those reviews. As we have concluded, those statutes allow a juvenile court the discretion to order less than the maximum amount of reunification services. Rule 5.710 must be read in light of that conclusion.

■ We end the discussion where we began it, confirming the critical importance of reunification services. (*In re Luke L., supra*, 44 Cal.App.4th 670, 678.) That said, there are some situations where a juvenile court may in the exercise of its discretion terminate reunification services earlier than the applicable default period here of 12 months. (§ 361.5, subd. (a).) The exercise of that discretion to terminate services short of 12 months will, we confide, be very infrequent. Such a decision will be warranted only in those situations where the parent has already received or been offered reunification services, thus giving the juvenile court a basis for evaluating whether additional services will be utilized by the parent in the time remaining for reunification. Only from this historical perspective will the juvenile court be able to conclude, as the *Aryanna C.* court emphasized, that "the likelihood of reunification is extremely low." (*Aryanna C., supra*, 132 Cal.App.4th 1234, 1242; see *Daria D. v. Superior Court* (1998) 61 Cal.App.4th 606, 613 [71 Cal.Rptr.2d 668] ["services may be terminated at the six-month stage . . . when 'parental unfitness is so well established that there is no longer "reason to believe that positive, nurturing parent-child relationships exist" ' "].)

■ This, we conclude, is one of those rare situations. And, because the juvenile court erroneously concluded that it had no discretion, its ruling cannot be upheld as an informed exercise of the discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 378 [14 Cal.Rptr.3d 880, 92 P.3d 369]; *People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8 [193 Cal.Rptr. 882, 667 P.2d 686]; *In re Carmaleta B.* (1978) 21 Cal.3d 482, 496 [146 Cal.Rptr. 623, 579 P.2d 514].)

---

probability that the child may be returned within 6 months or within 12 months of the date the child entered foster care, whichever is sooner, or that reasonable services have not been offered or provided.

"In order to find a substantial probability of return within the applicable time period, the court must find all of the following:

"(i) The parent or guardian has consistently and regularly contacted and visited the child;

"(ii) The parent or guardian has made significant progress in resolving the problems that led to the removal of the child; and

"(iii) The parent or guardian has demonstrated the capacity and ability to complete the objectives of the treatment plan and to provide for the child's safety, protection, physical and emotional health, and special needs. . . ."

## DISPOSITION

The order is reversed.

Kline, P. J., and Lambden, J., concurred.