Filed 6/25/14  In re Y.S. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Y.S. at al., Persons Coming Under the Juvenile Court Law. | |
| TIFFANY S., Petitioner, v. SUPERIOR COURT, CITY AND COUNTY OF SAN FRANCISCO, Respondent; SAN FRANCISCO HUMAN SERVICES AGENCY, Real Party in Interest. | A141540 (San Francisco County Super. Ct. No. JD13-3067, 3068, 3068A-C) |

In this Welfare and Institutions Code section 300 dependency proceeding,[1] the juvenile court terminated reunification services to mother Tiffany S. and set a section 366.26 selection and implementation hearing for July 16, 2014.  Tiffany petitions for extraordinary writ relief, contending that termination of services at the six-month review was improper and that the San Francisco Human Services Agency (Agency) failed

---

[1] All statutory references are to the Welfare and Institutions Code.

1

to provide reasonable services.  We conclude both arguments lack merit, and we deny the petition.

## BACKGROUND

**The Family**

Tiffany's involvement with the Agency dates back to 1998, when her first child—born when Tiffany was only 14 years old—was detained due to Tiffany's incarceration. Her parental rights were terminated, and the child was placed for adoption.  She subsequently had five more children, ranging in age from four to 12 years old at the time this dependency proceeding commenced.  Since the initial referral in 1998, the family has been the subject of at least 18 referrals, which, according the Agency, have involved "emotional abuse, mother and father's substance abuse, physical abuse of the children, neglect, educational neglect, mother's mental health concerns, domestic violence, caretaker absence/incapacity, mother and child's positive tox screens, child abandonment and medical and environmental neglect."

In July 2010, a referral alleging abuse and neglect led to the filing of a section 300 petition and removal of the five children from the care of Tiffany and Marcelo R., the father of the four younger children.[2]  After completing a substance abuse program in the fall of 2012, Tiffany reunified with her children, and in December 2012, the dependency was dismissed, with Tiffany receiving sole physical and legal custody of the children.

**The Referral**

On February 8, 2013—just two months after dismissal of the prior dependency proceeding—the Agency received information indicating that three of the children had missed a number of days of school.  When asked why, they said they were worried about their mother, who had been gone for one and a half to two weeks.  Their father was taking care of them, although he smelled strongly of alcohol when he picked them up

---

[2] Marcelo was also involved in this dependency proceeding.  This writ petition was brought only on Tiffany's behalf, however, and we therefore omit facts pertaining to Marcelo except where relevant to the issues before us.  The father of the fifth child was not involved, as his whereabouts were unknown.

2

from school.  According to the reporting party, the children were unclean, tired, and despondent.

On February 15, a social worker interviewed Y.S., the oldest child.  She reported staying with her aunt because she felt unsafe living with her stepfather.  According to Y.S., other than a few days, her mother had been gone since December.  She said her mother was using drugs again and Marcelo was drinking again.  According to Y.S, her mother told her she had been kidnapped and beaten up.

The social worker also met with the five children together.  They confirmed they had not seen their mother and did not know where she was.  They also confirmed their father was drinking again, going to his brother's house to drink after he dropped them off at school.  He smelled like beer when he picked them up from school, and they did not like it when he drank because he got crazy, which scared them.

That same day, the social worker met with Tiffany (who had apparently returned home after learning about the Agency's involvement) and Marcelo.  Marcelo admitted drinking again, and Tiffany admitted prescription drug use.  She had also been taking methadone but then switched to methamphetamine in order to withdraw from methadone.  Tiffany denied she had been gone since December, at the same time claiming she had left to withdraw from methadone and had been kidnapped by a friend and held hostage for a week.  Both parents acknowledged they had lost their jobs.

At a team decision meeting on February 19, the parents expressed a willingness to engage in substance abuse services.  A safety plan was developed that required Tiffany and Marcelo to parent together with relapse services and an agreement as to who was going to care for the children.  Subject to that safety plan, the children were released to their parents.

**Section 300 Petition**

Tiffany and Marcelo minimally engaged in their programs, however, and on March 14, the Agency filed a section 300 petition, alleging failure to protect the

3

children.[3] The numerous allegations detailed the parents' drug and alcohol abuse and neglect.

On May 2, the Agency filed a jurisdiction/disposition report advising that Tiffany had begun a pre-treatment program at the end of February. She failed, however, to complete the pre-treatment program and stopped participating in the program altogether. In April, she had a positive drug test and missed two subsequent tests.

The Agency also reported that Tiffany had long history of mental health problems, having been hospitalized in 1999 and 2001 due to emotional instability. She displayed self-destructive behaviors and had a history of suicide attempts dating back to 1996 or 1997. She had also been diagnosed with a mood disorder and general anxiety.

In terms of "assessment/evaluation," the Agency summarized: "This family is before the Court today due to the mother and the presumed father's relapse with substance [*sic*] and their subsequent neglect of the minors. [¶] Despite their relapse, both Ms. S. and Mr. R. have expressed their desire to address their recovery and to maintain their family together. Although [they] expressed desire, their action in addressing their recovery is rather pedestrian. . . . [¶] . . . Ms. S. started her pre-treatment program with the Iris Center but has since faded from participating in its recovery programs as well as cooperating with this Agency. Ms. S. drug tested once with a positive result for oxycodone, and she has since missed the subsequent tests. The mother's positive test and her missed tests coupled with her evading the undersigned suggest that she may be continuing to use drugs. Her current whereabouts are unknown, and the minors indicate that their mother returns home periodically to check in on them. [¶] . . . It is the undersigned's hope that the mother would re-engage with this Agency and become a part of [the] support system for her family."

---

[3] The Agency actually filed two similar petitions: one pertaining to Y.S. and another pertaining to the four other children. This was apparently because Y.S. has a different father than the other children. The two proceedings progressed identically, and we shall refer to a single proceeding for ease of reference.

4

In light of the foregoing, the Agency recommended the court sustain the allegations in the petition, declare the children dependents, order family maintenance services, and continue the matter for a six-month review.

Tiffany did not appear at a May 8 settlement conference on jurisdiction/ disposition. In her absence, the court sustained amended allegations that she had substance abuse and psychiatric issues requiring assessment and treatment, and that domestic violence, substance abuse, and neglect made the family home unsuitable for the children. The matter was continued for disposition on May 17.

**Section 387 Supplemental Petition and Detention**

On May 16, the Agency filed a status report and section 387 supplemental petition seeking a more restrictive placement, namely, detention of the children. As to why it was now recommending removal instead of family maintenance, the Agency explained that after the May 8 conference, it had learned that Marcelo, who had assumed the role of primary care giver for the children, was no longer living in the home, despite that the safety plan required Tiffany and Marcelo to co-parent. According to the Agency, Tiffany claimed Marcelo had been drinking excessively since December and was physically abusing her and emotionally abusing Y.S. Tiffany told the Agency she intended to file for divorce and had a new boyfriend who had moved into the family home. According to the Agency, the boyfriend had an extensive criminal record and appeared to be an active addict.

Once the Agency became aware of these developments, it had worked with Tiffany to develop a revised safety plan, pursuant to which she agreed to submit to drug testing, attend a relapse prevention class, ensure the children's school attendance, and not leave the children alone with Marcelo. Despite Tiffany's consent to the plan, she failed to attend a relapse prevention class, missed a drug test, and failed to get the children to school on at least two different days. In light of these changes, on May 14, the Agency had removed the children from the home and placed them in foster care.

The Agency concluded by noting that the children had previously been removed from the home in the 2010 dependency proceeding, only to be returned home and then

5

removed again. The children did not, as the Agency put it, "deserve" this "roller coaster." Accordingly, the Agency indicated that "the parents would need to demonstrate a prolonged period of successfully engaging with their service requirements before any thought of returning the minors to the parents could be contemplated."

At the May 17 detention hearing, the court ordered the children detained with the parents to receive visitation, and continued the matter for a July 10 settlement conference regarding jurisdiction and disposition.

**Jurisdiction and Disposition**

In a July 1 jurisdiction/disposition report, the Agency reported the following efforts to facilitate Tiffany's reunification with her children: it had referred her for drug testing, a substance abuse assessment and evaluation, a psychological assessment and therapy, and domestic violence support services; supervised visitation with her children; and provided a list of parenting education referrals. Tiffany had not, however, submitted to drug testing, undergone a substance abuse assessment, or begun her recovery treatment program. In fact, she had not availed herself of any services other than visitation or made any steps towards alleviating the circumstances that led to the Agency's involvement. The Agency believed her failure to drug test combined with her lack of attendance in the relapse prevention program suggested she continued to abuse substances. Accordingly, it recommended the court declare the children dependents and order reunification services.

The Agency proposed the following service objectives for Tiffany: show her ability and willingness to have custody of her children; obtain resources to meet the needs of her children and provide a safe home; consistently, appropriately, and adequately parent her children; comply with all court orders; comply with the conditions of the visitation plan; stay sober and demonstrate her ability to live free from alcohol and drug dependency; comply with all required drug tests; maintain stable and suitable housing; and comply with medical or psychological treatment.

**Section 342 Amended Petition**

On July 9, the Agency filed an amended petition pursuant to section 342 petition, alleging section 300, subdivision (b) failure to protect, as follows: "since the last petition

was sustained on 5/8/13, the mother has failed to comply with the safety plan made with the [social worker], in that the mother has failed to submit to substance testing, has not attended relapse prevention, has not ensured the children's timely attendance at school, and has brought her boyfriend to live in the home. The boyfriend has an extensive criminal record and appears to be an active drug addict." It also alleged that Marcelo was actively drinking and unable to safely care for the children.

At a settlement conference the next day, the Agency withdrew the May 30 section 387 supplemental petition, proceeding with the section 342 petition in its place. The court continued the matter to August 21 for a settlement conference on jurisdiction and disposition.

On August 14, the Agency filed an addendum report in which it informed the court that Tiffany had "done little" to address the issues that led to the detention of her children, summarizing, "Since their removal, Ms. S. is visiting with the minors but nothing much else. This Agency has referred the mother to drug testing, drug assessment/evaluation and individual therapy. However, the mother has not engaged in these services at the last reporting period. On Friday before the writing of this report, Ms. S. continued to express that she would submit to drug testing and drug assessment by the following week as well as participate in therapy." The social worker further detailed that Tiffany had been "elusive" in meeting with him and had "not engaged in the necessary services to mitigate the safety factors."

Tiffany did not appear at the August 21 disposition conference. The court amended and sustained the allegation in section 342 petition, renewed the children's dependency status, ordered their continued detention in foster care, and ordered reunification services. It continued the matter to February 20, 2014 for a six-month review and August 19 for a 12-month review.

**Six-Month Status Review**

On January 31, 2014, the Agency submitted a six-month status review report in which it recommended termination of reunification services. It reported that Tiffany still had done little to address the issues that led to the removal of her children, having

7

"participated in a few supervised visits but nothing much else." And, in fact, her visitation record was not that stellar: "The Mother was provided supervised visitations . . . . The visits were appropriate and the minors were reported to always be excited and engaged with the Mother during the visits. After the Mother failed to show up/participate in visits for 3 consecutive weeks, the visitation [provider] terminated her services. The undersigned attempted on several occasions to engage the Mother in supervised visits and made referrals to Bayview YMCA for visitations, but the Mother failed to follow through and engage."

The Agency informed the court that Tiffany's mental health continued to be a concern. Despite having a documented history of hospitalizations due to "emotional instability," as well as a history of suicide attempts and other self-destructive behaviors and a diagnosis of a mood disorder and general anxiety, Tiffany had not complied with the requirement that she participate in individual therapy.

Concerning Tiffany's substance abuse, the Agency advised that on November 28, 2013, Tiffany had entered a 21-day detoxification program at the Joe Healy project, prior to which she had admittedly been using methamphetamines and heroin. She was expected to complete the program on December 19 and enter a drug treatment program that same day, but she checked herself out three days early. The social worker had had no contact with Tiffany since December 5, and her whereabouts were unknown at the time of the report.

Given Tiffany's continued struggle with substance abuse and mental health issues, her failure to engage in court ordered services, and her inability to demonstrate that she could develop the capacity to place the children's best interests above her own, the Agency recommended termination of services and the setting of a section 366.26 selection and implementation hearing with a permanent plan of adoption.

**Section 388 Petition**

On February 20, 2014, the Agency filed a section 388 petition, seeking to change the order for reunification services to one terminating parental rights, vacating the 12-month review hearing, and setting a section 366.26 selecting and implementation

8

hearing. The petition was based on the Agency's representation that Tiffany "has had minimal contact with the [A]gency, has failed to comply with court ordered services and has failed to demonstrate that she has or can develop the capacity to keep the minors' best interes[ts] above her own. [¶] The father has stated that he thinks adoption is in the best interest of his children. Despite his compliance with services, he is still not in a position to provide for the children on a permanent basis."[4]

**Contested Six-Month Review and Section 388 Petition Hearing**

On March 10, 2014, the court held a contested hearing on the six-month review and the Agency's section 388 petition. Social worker Blair Roe was the only witness to testify. Roe authored the January 31 status report and confirmed that since she wrote the report, Tiffany had not provided her with any drug test results, participated in therapy, or visited with her children. Tiffany's last visit with her children was on December 5, when Roe took her to a visit. Roe believed that on January 30, 2014, Tiffany had entered a drug treatment program at the House of Grace with a recommended length of participation of 14 months.

On cross-examination, Roe testified that Tiffany's case manager at the House of Grace told her Tiffany was attending weekly meetings that covered parenting issues and drug and alcohol abuse. She had been drug testing semiweekly for the past five weeks, although Roe had not requested the results of those tests. Tiffany's case manager told Roe that Tiffany was motivated in treatment and was showing a positive attitude toward recovery.

Roe also confirmed Tiffany attended a detox program from November 28 to December 16, 2013. While in the program, Tiffany had reached out to Roe, seeking help getting into an inpatient program directly from the detox program because she was concerned she would be unable to maintain her sobriety if she did not go directly into a

---

[4] Marcelo had engaged in reunification services and was largely compliant with his case plan, although he still struggled with sobriety. Despite his progress, he believed it to be in the children's best interest for them to move towards a stable, permanent life with the fost-adopt family.

program. Roe made arrangements for Tiffany to check into the House of Grace on December 19—the day she was scheduled to check out of the Joe Healy detox program—but she checked out of the detox program three days early.

As to visitation, Roe confirmed that Tiffany visited her children at least twice a month from May to October. She then missed visits for three consecutive weeks, so the visitation provider terminated her services. Roe made a referral for visitation at a different facility, but Tiffany failed to follow up on it. When Tiffany did visit with her children, however, they were happy to see their mother and exhibited signs of being bonded with her. While in her detox program, Tiffany had requested visitation, which request Roe accommodated. And Tiffany had contacted Roe in February to set up visitation, but the arrangements were still in process because of Tiffany's 30-day blackout period and logistical challenges due to the children's Contra Costa County placement.

Roe also confirmed that she met with Tiffany monthly from September to December 2013, providing her with referrals for various services. Roe acknowledged that many of the referrals were for programs in which Tiffany had participated in the prior dependency, but she denied Tiffany had expressed an unwillingness to participate in the programs because she had already done so. She also did not recall Tiffany seeking out services on her own. Roe did speak with a community pastor who assisted Tiffany with obtaining services, helping her get into the detox program and a methadone clinic. Roe was uncertain whether the pastor helped Tiffany get into the House of Grace, although she acknowledged Tiffany got into the program without the Agency's further assistance.

Roe also acknowledged that Tiffany had experienced some medical issues in the previous six months, including miscarrying a twin pregnancy. And she was aware Tiffany's sister had been shot.

Roe agreed that Tiffany was supportive of the children's current foster family, and supported their placement with that family under a guardianship. The children all reported feeling safe, stress-free, happy to be together, and bonded with their foster

family. Roe acknowledged that 13-year-old Y.S. had expressed a strong desire to reunify with her mother, although on other occasions she had also voiced a desire to be adopted by the foster family. And Y.S. was doing "really well" in her current school, forming healthy relationships, keeping up her grades, and avoiding "girl drama" that existed at her prior school.

Following the presentation of evidence, the court heard closing arguments, with counsel for Tiffany arguing first. Conceding that the court can terminate reunification services at any time, counsel argued that there exists a presumption that services should be provided for 12 months and that the primary goal is family reunification. She noted that Tiffany was taking steps to "[get] her life back together" and address her relapse, having completed a detox program and following that with "a very intensive inpatient program" in which she was very motivated. This was not, she submitted, a situation where the parent disappeared for six months. Rather, Tiffany visited at least two times a month for the first six months and once in December, and had been requesting visits since she entered the treatment program. Additionally, the children were very bonded with Tiffany and would benefit from additional reunification services.

Counsel for the Agency argued, on the other hand, that section 388, subdivision (c)(1)(B) authorized the court to terminate services at the six-month review when the action or inaction of the parent created a substantial likelihood that reunification would not occur. And, he submitted, the evidence demonstrated that there was not a substantial probability that Tiffany could reunify if services were extended to the 12-month review, particularly given that she was in the beginning stages of a program that would last up to 14 months.

Counsel for the children agreed with the Agency that it would be "pretty much impossible" for Tiffany to reunify in the next few months. And given the "long history of the case" and that Tiffany had been "in and out of the children's lives," he argued it was appropriate to terminate services.

Tiffany's counsel disputed the Agency's representation that the court had to find there was a substantial probability of return in order to continue services, claiming that

standard applied only to children who were three years old and under. Instead, she argued, the court had to determine there was "absolutely no likelihood" of reunification, and she submitted the evidence did not show that to be the case.

Counsel for the Agency agreed that the court did not have to find a substantial probability of reunification in order to continue services. He argued, however, that the court could terminate services where the inaction of the parents creates a substantial likelihood that reunification will not occur.

After hearing arguments, the court stated that it had the discretion to terminate services at that point, and it went on to do so, explaining:

"I commend mother for what she is accomplishing thus far. But my view is that it is too little, too late. And I am of the view that reunification, likelihood is extremely low.

"We have a lot of failure to participate in services. And the visits have been minimal. There have been a few supervised visits, but that's been it.

"I am aware that the children are in a placement that wants them, they are all together as I understand it. And I know that was exceedingly important to the father, as I recall, and I believe it is similarly important to mother that they are there together. And that they seem to be well cared for and safe in this placement, and that this family appears to be very interested in having all of these children with them on a permanent basis. [¶] . . . [¶] . . . [T]he Court finds that conditions still exist which would justify initial assumption of jurisdiction under Section 300, or such conditions are likely to exist if supervision were withdrawn. And that a return of the children to the parents would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being.

"And the facts upon which a decision that a return would be detrimental is based [on] the continuing challenges that mother has to address, her substance abuse. . . .

"And at this time I am terminating reunification services for both parents.

"And I will find that reasonable efforts have been provided or offered designed to aid the parents in overcoming the problems that led to the initial removal and continued custody of the children, and that their placement is necessary and appropriate. And that

12

the Agency has complied with the case plan by making reasonable efforts to return the children to a safe home and to complete whatever steps are necessary to finalize their permanent placement.

"I will find that mother's efforts during this period have been minimal to moderate."

With that, the court granted the Agency's section 388 petition to change order, vacated the 12-month review hearing, and set a section 366.26 permanency hearing for July 16, 2014.

This timely writ petition followed.

## DISCUSSION

### The Juvenile Court Order Terminating Reunification Services Was Proper

In her first argument, Tiffany challenges the court's termination of reunification services. She and the Agency disagree, however, on the applicable standard of review we are to apply to this issue. According to Tiffany, we review an order terminating reunification services and setting a section 366.26 permanency hearing for substantial evidence. The Agency contends, however, that in terminating services, the court granted the Agency's section 388 petition to change order, which we review for abuse of discretion. Our opinion in *In re Derrick S.* (2007) 156 Cal.App.4th 436 (*Derrick S.*) reconciles this apparent conflict.

Seven-year-old Derrick was detained from his mother's care due to her substance abuse and neglect. The juvenile court ordered reunification services and approved a case plan requiring the mother to complete a drug treatment program. Prior to the six-month review hearing, the social services bureau submitted a status report advising that the mother had not entered a drug treatment program, had not participated in the services offered under her case plan, and had a warrant out for her arrest. (*Derrick S., supra,* 156 Cal.App.4th at pp. 440–441.) Despite this, the bureau was "guardedly optimistic" about reunification and recommended additional services. Derrick, on the other hand, submitted a brief urging the court to terminate services and set an early section 366.26 permanency hearing. (*Id.* at pp. 441-442.)

13

At the six-month review hearing, the court acknowledged the mother had " 'done little if anything' " to comply with her case plan. (*Derrick S., supra,*156 Cal.App.4th at p. 443.)  Nevertheless, it denied Derrick's request to terminate services because it believed section 361.5 (and former rule 1460 of the California Rules of Court) required it to grant the mother an additional six months of reunification services. (*Id.* at pp. 439, 443.)

On an appeal by Derrick, we reversed. (*Derrick S., supra,* 156 Cal.App.4th at p. 439.)  We explained that section 361.5 creates a "dual-track approach" to reunification based on the minor's age, providing 12 months of reunification services for a child who was three years of age or older at the time of removal, and six months of reunification services for a child who was under the age of three. (*Id.* at pp. 444–445.)  We went on to note, however, that "none of these time periods is immutable" because "there is no absolute right to receive the maximum amount of statutorily fixed services in any and all circumstances." (*Id.* at p. 445.)  Instead, we explained, a section 388 petition may be used to request termination of a parent's reunification services prior to the 12-month mark. (*Ibid.*)  And the court may exercise its discretion to terminate services "in the rare case when 'the likelihood of reunification is,' for whatever reason, 'extremely low.' " (*Id.* at p. 448.)

As *Derrick S.* thus instructs, the juvenile court here had the discretion to terminate services to Tiffany at the six-month mark, a decision that we review for abuse of that discretion.  This decision must be based on a finding that the likelihood of reunification was extremely low, a finding we review for substantial evidence.  With this standard in mind, we turn to the record before us, and conclude that the court's order terminating services and setting the section 366.26 permanency hearing was sound.

This dependency proceeding commenced in February 2013, when the Agency received a referral that three of Tiffany's children were not attending school and were unclean, tired, and despondent.  This was a mere two months after Tiffany had reunified with the children following a prior dependency proceeding necessitated by her substance abuse.  Despite that Tiffany's drug problems had previously led to the removal of her

14

children from her care, Tiffany did not promptly engage in relapse prevention services. In May 2013, after three months of failed attempts at family maintenance, the children were once again removed from Tiffany's care. Tiffany was referred to a wide range of services to address her ongoing substance abuse and mental health concerns, but she still failed to engage in services to ameliorate these problems.

Not until the end of November—nine months after the Agency's involvement began—did Tiffany finally take a step to address her substance abuse problem by entering a detox program. While this was a step in the right direction, she did not complete the program, instead checking herself out early and failing to enter the inpatient drug treatment program the Agency had lined up for her. Tiffany finally entered a residential treatment program in January 2014—11 months after the Agency received the initial referral and just two months before the six-month review hearing was scheduled. Tiffany was to complete a 14-month program, making reunification by the 12-month mark "pretty much impossible." As the juvenile court aptly described it, Tiffany's attempt was "too little, too late." On this record, we easily conclude substantial evidence supported the court's finding that the likelihood of reunification was extremely low. And given this well-supported finding, we conclude there was no abuse of discretion in the juvenile court's termination of services.

**The Juvenile Court's Finding That the Agency Provided Reasonable Services Is Supported By Substantial Evidence**

Tiffany alternatively argues that the Agency failed to provide reasonable services. We review the juvenile court's finding of reasonable services for substantial evidence. (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1018; *In re Joanna Y.* (1992) 8 Cal.App.4th 433, 439.) Substantial evidence is "evidence which is reasonable, credible and of solid value . . . ." (*In re Jasmine C.* (1999) 70 Cal.App.4th 71, 75.) Applying this standard here, we conclude the juvenile court's finding that the Agency provided Tiffany reasonable reunification services was amply supported.

Reunification services, which play a critical role in dependency proceedings, must be tailored to the particular needs of the family. (§ 361.5; *In re Alanna A.* (2005)

135 Cal.App.4th 555, 563; *David B. v. Superior Court* (2004) 123 Cal.App.4th 768, 793.) We thus judge the reasonableness of the Agency's reunification efforts according to the circumstances of each case. (*Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164.) To support a finding reasonable services were offered or provided, "the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult . . . ." (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414.) The services need not be "the best that might be provided in an ideal world" but, rather, must be "reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.)

At the outset of this dependency case, the Agency identified Tiffany's substance abuse, mental health concerns, and neglect of her children, along with violent relationship between her and Marcelo, as the bases for its involvement. Tiffany agreed to participate in substance abuse services, but she minimally engaged in that program, commencing but not completing a pre-treatment program before dropping out altogether. Shortly thereafter, she had a positive drug test, missed two subsequent tests, and failed to attend relapse prevention class.

Given Tiffany's failure to address her substance abuse issues, the children were then detained. The Agency referred Tiffany for drug testing, a substance abuse assessment and evaluation, a psychological assessment and therapy, and domestic violence support services, and provided a list of parenting education referrals, services designed to assist Tiffany in eliminating the problems that led to the dependency. When Tiffany finally entered into a detox program nine months after the Agency's initial involvement, the Agency arranged for her to check directly into an inpatient substance abuse treatment program on the day of her discharge from the detox program. Tiffany, however, checked herself out of the detox program before completion and dropped out of contact with the Agency.

16

The Agency also arranged visitation commencing when the children were removed in May 2013. Tiffany visited twice monthly for six months, and then missed visits for three consecutive weeks, resulting in the termination of visits by the visitation provider. The Agency attempted to reengage Tiffany in visits, referring her to a different visitation provider, but Tiffany failed to follow through on that referral. When Tiffany was in a detox program in December 2013, she requested visitation with her children, and the social worker arranged for a visit. Tiffany also requested visitation once she entered the House of Grace inpatient treatment program, and Roe testified at the six-month review hearing that the Agency was in the process of arranging visitation, a process complicated by Tiffany's 30-day black out period and the children's placement in Contra Costa County.

Despite this lengthy list of services the Agency provided to assist Tiffany in alleviating the concerns that led to the dependency, Tiffany nevertheless complains that the only referrals the Agency gave her "were for programs that she had already participated in during the previous dependency and were not successful in helping her with long term sobriety." But Roe testified that Tiffany never objected to the referrals or requested that she be referred to different programs than those in which she had previously participated. And this argument also ignores the fact that the programs were successful in helping Tiffany eliminate the concerns that led to the 2010 dependency, as she was reunified with her five children with the help of those referrals.

Tiffany also complains that the Agency was aware of her miscarriage and her sister's shooting but did not take "these events into account or [alter] the services offered to [Tiffany] in light of these traumatic circumstances." There is no evidence in the record, however, that Tiffany expressed any need for a change in services in light of these events, nor does she suggest what different services the Agency should have offered.

Tiffany also suggests that the Agency failed to provide adequate visitation, noting that she received only one visit in December and nothing after that. She fails to acknowledge, however, that her visitations were terminated in the fall of 2013 because she missed visits for three consecutive weeks and then failed to follow up on a referral to

17

a different visitation provider. Once in a detox program in November and December 2013, the Agency arranged a visit at Tiffany's request. Tiffany then left that program prematurely and dropped out of contact with the Agency. Only in February 2014, after she had entered an inpatient treatment program, did she once again request visitation and, according to Roe's testimony, the Agency was in the process of making visitation arrangements. This record simply does not support Tiffany's claim that the Agency's provision of visitation services was inadequate.

In short, this is not a case where the Agency failed to provide reasonable services. Rather, the Agency provided reasonable services, and Tiffany simply failed to avail herself of them. We thus conclude the juvenile court's reasonable services finding was supported by substantial evidence.

### DISPOSITION

The petition of mother Tiffany S. for extraordinary writ relief is denied on its merits. (Cal. Rules of Court, rule 8.452(h)(1).) This decision is final as to this court forthwith. (*Id.*, rule 8.490(b)(2)(A).)


_____
Richman, J.


We concur:


_____
Kline, P.J.


_____
Brick, J.[*]


_____
[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


18