Filed 9/29/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| M.C., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF DEL NORTE COUNTY, <br><br> Respondent; <br><br> DEL NORTE COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, <br><br> Real Party in Interest. | A148627 <br><br> (Del Norte County <br> Super. Ct. Nos. JVSQ15-6161 & <br> JVSQ15-6162) |

M.C. (Mother) seeks writ relief from orders terminating her reunification services at the six-month review hearing and setting the matter for a Welfare and Institutions Code section 366.26 hearing.[1]  C.C. and K.C. were removed from Mother when the children were five and 11 years old, respectively, based on Mother's substance abuse issues, criminal activity, and the condition of her home.  Mother contends she was statutorily entitled to 12 months of services and that period could be shortened only on the filing of a section 388 petition.  We conclude Mother was entitled to 12 months of services except under the circumstances specified in section 361.5, subdivision (a)(2).  The juvenile court did not terminate services in accordance with these statutory provisions.  We therefore grant Mother's writ petition.

---

[1]  All further statutory references are to the Welfare and Institutions Code.

BACKGROUND

The Del Norte County Department of Health and Human Services (Department) received a referral from law enforcement after officers searched Mother's residence and found mushrooms, meth pipes, marijuana paraphernalia, concentrated cannabis, brass knuckles and butterfly knives. It also appeared the occupants were hoarders, as there were large piles of items. Some of the piles were over seven feet tall, presenting a hazard to the children. Mother was arrested for possession of a controlled substance, possession of drug paraphernalia, possession of marijuana over 28.5 grams, possession for sale, receiving stolen property, and carrying a dirk or dagger. Two days later, Mother tested positive for methamphetamine, benzodiazepines, and marijuana. K.C. and C.C. were immediately removed from her custody.

The Department filed a juvenile dependency petition alleging failure to protect the children, leaving them without support, and abuse of a sibling under section 300. The petition further alleged Mother has a substance abuse problem that impairs her ability to adequately supervise and care for the children, and she engages in criminal activity that places the children at substantial risk of physical and/or emotional harm. The court ordered K.C. and C.C. detained, and ordered that Mother receive parenting education, random drug screening, substance abuse assessment and any recommended treatment. The court also ordered supervised visitation.

In subsequent reports, the Department noted Mother's substance abuse was "causing clouded judgment as to what is an appropriate environment and care for her children." Despite her admitted daily marijuana and occasional methamphetamine use, Mother continued to deny she had a substance abuse problem stating she "only uses meth to do yard work."

Prior to the six-month review hearing, the Department filed a report stating Mother had not "involved herself in any of the services" offered, apparently because she was a "medical" marijuana user and thus was not eligible for substance abuse treatment. Nor did Mother apparently think these programs would help her address a methamphetamine habit. The report further advised Mother had just accepted a plea deal

2

to resolve charges based on her "keeping a drug house," whereby she would be sentenced to eight months in state prison and thereafter be on probation, subject to drug testing. The Department expressed hope that, having been required to participate in drug treatment in prison, she would comply with testing and program requirements on probation. Mother also had agreed to complete a mental health assessment and to attend parenting classes. The Department therefore recommended that services be continued.

About two weeks later, the Department filed an addendum. The Department newly recommended services be terminated because Mother had, in fact, been sentenced to 18 months in state prison and it was "unknown what services would be available or offered" while she is incarcerated. The Department "cannot recommend an additional six months of services" if Mother "is to be unable to comply with her case plan requirements."

At the contested six-month review hearing, Mother's counsel advised the court Mother had actually been sentenced to 16 months in state prison. The Department, in turn, explained it would have recommended continued services if Mother was going to be released prior to the end of the "review period," but that was no longer the case. At that point, the juvenile court stated it was obvious the Department's "witness is incorrect." On a 16-month sentence, said the court, Mother would "do eight months," plus she had credits for time already served. It was apparent none of the participants at the hearing knew exactly how long Mother would be incarcerated, or what programs would be available to her in prison. The court commented, ". . . I think [state prisons] have services. But what I've seen, generally, have not been particularly good services and don't—frankly, aren't as good as what's available here."

Ultimately, the juvenile court made numerous findings, including: adequate services were provided, mother had "simply not engaged in services," there was an "extremely low" likelihood of reunification prior to the 12-month dependency hearing, Mother had not provided a safe and secure home, the services that would be available to her in prison would be inadequate to overcome her many serious problems, and the

minors' need for permanency.  The court ordered services terminated and set the matter for a permanency hearing under section 366.26.

*Applicable Welfare and Institutions Code Provisions*

Section 361.5, subdivision (a)(1), provides that where a detained child is three years of age or older, 12 months of reunification services "shall be provided" to the parent.  (§ 361.5, subd. (a)(1)(A).)  Subdivision (a)(2) provides the framework for terminating services prior to the end of the 12-month period.  It states in relevant part: "Any motion to terminate court-ordered reunification services prior to the hearing set pursuant to subdivision (f) of Section 366.21 [the permanency hearing, which is to be held no later than 12 months after the child enters foster care] for a child described by subparagraph (A) of paragraph (1) [a child three years of age or older] . . . shall be made pursuant to the requirements set forth in subdivision (c) of Section 388." (§ 361.5, subd. (a)(2).)  It further states that such a motion "shall not be required" for the court to terminate services prior to the permanency hearing if, at the six-month review hearing, the court "finds by clear and convincing evidence one of the following: [¶] (A) That the child was removed initially under subdivision (g) of Section 300 and the whereabouts of the parent are still unknown. [¶] (B) That the parent has failed to contact and visit the child. [¶] (C) That the parent has been convicted of a felony indicating parental unfitness." (§ 361.5, subd. (a)(2)(A), (B), (C); see generally *In re J.P.* (2014) 229 Cal.App.4th 108, 121–122 (*J.P.*).)

Subdivision (c) of section 388, in turn, provides, in relevant part:  "Any party, including a child who is a dependent of the juvenile court, may petition the court, prior to the [dependency] hearing . . . to terminate court-ordered reunification services provided under subdivision (a) of Section 361.5 only if one of the following conditions exists: [¶] (A) It appears that a change of circumstance or new evidence exists that satisfies a condition set forth in subdivision (b) or (e) of Section 361.5 justifying termination of court-ordered reunification services. [¶] (B) The action or inaction of the parent or guardian creates a substantial likelihood that reunification will not occur, including, but

4

not limited to, the parent's or guardian's failure to visit the child, or the failure of the parent or guardian to participate regularly and make substantive progress in a court-ordered treatment plan." (§ 388, subd. (c)(1)(A), (B).) The court can terminate services only if it finds, by clear and convincing evidence, that reasonable services have been offered and one of these two conditions exist. (§ 388, subd. (c)(3); see *J.P., supra,* 229 Cal.App.4th at p. 122.)

### *"Disentitlement Doctrine"*

The Department advances three arguments in support of the juvenile court's orders. It first maintains Mother is foreclosed from seeking writ relief under the "disentitlement" doctrine. While it is true, "[a] reviewing court has inherent power to dismiss an appeal when the appealing party has refused to comply with the orders of the trial court[,] [citation] . . . [i]n dependency cases, the doctrine has been applied only in cases of the most egregious conduct by appellant that frustrates the purpose of dependency law and makes it impossible for the court to protect the child or act in the child's best interests. (See *In re Kamelia S.* (2000) 82 Cal.App.4th 1224 [father absconded with minor]; *Guardianship of Melissa W.* (2002) 96 Cal.App.4th 1293 [grandparents absconded with minor]; *Adoption of Jacob C.* (1994) 25 Cal.App.4th 617 [mother abducted child].)" (*In re Z.K.* (2011) 201 Cal.App.4th 51, 63.)

This is not such a case. Mother made some, albeit minimal, attempt to comply with her case plan. She contacted mental health services and made some effort to visit the children. The Department, itself, observed Mother seemingly loved her children and exhibited some motivation in progressing with her plan, and it initially recommended that services be continued. It subsequently recommended termination because Mother faced a prison sentence. In short, Mother's conduct does not rise to the level of "flagrant disobedience and contempt" that would justify disentitlement to pursue her appellate remedies. (*In re Z.K., supra*, 201 Cal.App.4th at p. 64.)

### *Discretion to Terminate Services*

The Department secondly maintains juvenile courts have inherent discretion to terminate services at any time, whether or not a section 388 petition has been filed. The

Department relies on *In re Aryanna C.* (2005) 132 Cal.App.4th 1234 (*Aryanna C.*) and *In re Derrick S.* (2007) 156 Cal.App.4th 436 (*Derrick S.*).

In *Aryanna C.*, the father appealed from an order terminating his parental rights to an infant. At the three-month review hearing, the juvenile court terminated reunification services and set the matter for a section 366.26 hearing. (*Aryanna C., supra*, 132 Cal.App.4th at p. 1238.) Since the child was under three, a six-month, rather than a 12-month, period of reunification services applied. (*Id.* at pp. 1239–1240.) On appeal, the father maintained he was entitled to a full six months of services and the only way that period could be shortened was by way of a section 388 petition. (*Aryanna C.*, at p. 1239.) The Court of Appeal affirmed the early termination of services. It declined to read section 361.5 as setting forth mandatory time periods, stating the statutes governing reunification services must be considered "in light of the juvenile dependency system as a whole" and the "overall objective of that system is the protection of abused or neglected children." (*Aryanna C.*, at p. 1241.) Thus, "[r]eading sections 361.5, subdivision (a), and 366.21, subdivision (e), together," the court concluded "the juvenile court has the discretion to terminate the reunification services of a parent at any time after it has ordered them, depending on the circumstances." (*Id.* at p. 1242.)

This conclusion was supported, said the *Aryanna C.* court, by the language of section 361.5, subdivision (a)(2), which at that time stated, with respect to a child under three, that "services 'may not exceed' " six months. This established a maximum time period, not a minimum entitlement. (*Aryanna C., supra*, 132 Cal.App.4th at p. 1242.) The court also pointed to section 366.21, subdivision (e), which provides if the child is not returned to the parent at the six-month review hearing, the juvenile court "shall" order that services "be initiated, continued or terminated." (§ 366.21 subd. (e)(8).) The court observed a six-month review hearing may, in fact, be held earlier than six months after the initial dispositional hearing. (*Aryanna C., supra*, 132 Cal.App.4th at pp. 1240–1241.)

The *Aryanna C.* court recognized the importance of reunification services "cannot be gainsaid" and the "law favors reunification whenever possible." (*Aryanna C., supra*, 132 Cal.App.4th at p. 1242) However, "reunification services constitute a benefit; there

6

is no constitutional ' "entitlement" ' to those services." (*Ibid.*) It, therefore, "remains within the discretion of the juvenile court to determine whether continued services are in the best interests of the minor, or whether those services should be ended at some point" before the statutory period has elapsed. (*Id.* at p. 1243.)

In *Derrick S.*, a child over the age of three appealed from a six-month review hearing order denying his request to terminate services for his mother and to set a section 366.26 hearing. Following the reasoning of *Aryanna C.*, the Court of Appeal concluded juvenile courts also have discretion in cases involving children over the age of three to terminate services prior to the 12-month hearing. (*Derrick S.*, *supra,* 156 Cal.App.4th at p. 439.) The court called the periods set forth in section 361.5, "default" periods. "This statutory language establishes a dual-track approach based on the dependent minor's age. If the child is under three, the default position is six months of reunification services. If the child is over three, the default position is 12 months. For both categories, the outer limit is 18 months." (*Derrick S.*, at pp. 444–445.) "But none of these time periods," said the court, "is immutable." (*Id.* at p. 445.) There is "no absolute right to receive the maximum amount of statutorily fixed services in any and all circumstances"—made clear by the "no fewer than 15 situations in which the juvenile court is not required to order *any* reunification services." (*Ibid.*) " 'Nowhere,' " observed the court, " 'is it provided that a *minimum* of 12 months of services is required.' " (*Ibid.*, quoting *In re David H.* (1995) 33 Cal.App.4th 368, 388.) And since 2000, "it has been established that a motion pursuant to section 388" may be used to ask the juvenile court to terminate services earlier. (*Ibid.*)

The *Derrick S.* court pointed out the language of section 361.5 provided, in connection with a child three or over, that reunification services "shall not exceed" 12 months, and section 366.21, subdivision (e) provided if a child was not returned to a parent at the six-month hearing, the court was to determine whether reasonable services had been provided, and either commence, continue or terminate services. (*Derrick S.*, *supra,* 156 Cal.App.4th at p. 448.) "These seemingly conflicting directives are harmonized by the *Aryanna C.* formula: 12 months of services will ordinarily be provided

7

for a parent of a dependent child over the age of three, but services may be discontinued in the rare case when 'the likelihood of reunification is,' for whatever reason, 'extremely low.' " (*Ibid.*)

The *Derrick S.* court was also of the opinion the Legislature could not have intended, "much less commanded," that services be provided where, by all indicators, it would be futile, as in the case before it, where the parent was on the run from law enforcement. (*Derrick S.*, *supra,* 156 Cal.App.4th at p. 448.) "[I]t would ill serve the needs of the dependent child to be hostage to a fugitive parent, particularly one with an ' "abysmal record of failure at reunification.' " (*Id.* at p. 449, quoting *Aryanna C., supra*, 132 Cal.App.4th at p. 1241.)

However, the year after *Derrick S.* was decided, the Legislature amended sections 361.5 and 388. The Assembly Committee on Human Services report explained the author's intent was to afford parents "a *minimum* (emphasis added) of 6 months of reunification services for children under three and 12 months of reunification services for children over the age of three." (Assem. Com. on Human Services, Analysis of Assem. Bill No. 2341 (2007–2008 Reg. Sess.) as amended Mar. 28, 2008, p. 2 [italics and parenthetical in original].) It further explained, "recent appellate cases allowing termination of reunification services prior to the end of these timeframes (see analysis of cases below) circumvent due process requirements and are inappropriate." (*Ibid.*) The report went on to specifically identify *Aryanna C.* and *Derrick S.* as holding the statutory time periods were not minimum periods, but rather set an "outside limit" on services and the court "could terminate those services any time after it ordered them." (Assem. Com. on Human Services, Analysis of Assem. Bill No. 2341 (2007–2008 Reg. Sess.) as amended Mar. 28, 2008 at p. 3.) "By contrast, prior appellate court decisions had characterized the 6 and 12-month timeframes as 'minimum' periods of time during which parents were 'entitled' to reunification services." (*Ibid.*) The report also observed that another court, prior to *Aryanna C.* and *Derrick S.*, had held the statutory time periods could properly be cut short by way of a section 388 petition. (Assem. Com. on Human

Services, Analysis of Assem. Bill No. 2341 (2007–2008 Reg. Sess.) as amended Mar. 28, 2008 at p. 3; see *Shelia S. v. Superior Court* (2000) 84 Cal.App.4th 872, 877–879.)

The report stated that, "[a]s amended, this bill would continue to allow courts to change, modify or set aside initial orders for reunification services, but would narrow the instances in which the court could use this discretion to those in which changed circumstances or new evidence, if available at the time of the disposition hearing, could have lead the court to bypass reunification services." (Assem. Com. on Human Services, Analysis of Assem. Bill No. 2341 (2007–2008 Reg. Sess.) as amended Mar. 28, 2008 at p. 4.)

The report also noted that the argument in opposition to the legislation was that services would have to be provided " 'whether or not the parent has shown any progress in reunification,' and the 'practical ramification of having *mandatory* times for reunification' " would be a delay in permanency for children. (Assem. Com. on Human Services, Analysis of Assem. Bill No. 2341 (2007–2008 Reg. Sess.) as amended Mar. 28, 2008 at p. 4.) In other words, the opposition voiced the same policy reasons that drove the courts in *Aryanna C.* and *Derrick S.* to conclude the then-existing statutory language did not establish mandatory reunification time periods and juvenile courts retained inherent discretion to terminate services prior to the statutorily designated periods.

There can be no question, then, that the 2008 amendments reined in *Aryanna C.* and *Derrick S.* and eliminated the broad discretion to terminate services at any time those cases had recognized. (See Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2341 (2007–2008 Reg. Sess.) as amended Apr. 16, 2008, pp. 3–6; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2341 (2007–2008 Reg. Sess.) as amended Aug. 18, 2008, pp. 4–5; Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2016) § 2.129[1] at p. 2-454 [2008 amendments making reunification

9

periods mandatory and limiting judicial discretion to terminate earlier "resulted in a major policy change for California"].[2])

The language of section 361.5 was, thus, changed from providing that reunification services are "not to exceed" either six or 12 months, to specifying that services "shall be provided" for either a six- or 12-month period. (§ 361.5, subd. (a)(1)(A), (B).)

Section 361.5 also now specifies that "[a]ny motion to terminate court-ordered reunification services prior to" the six-month hearing for a child under three or the twelve-month hearing for a child over three "shall be made pursuant to the requirements set forth in subdivision (c) of Section 388." (§ 361.5, subd. (a)(2).) However, such a motion "shall not be required" for the court to terminate services at the six-month review hearing if the court "finds by clear and convincing evidence one of the following: [¶] (A) That the child was removed initially under subdivision (g) of Section 300 and the whereabouts of the parent are still unknown. [¶] (B) That the parent has failed to contact

_____

[2] In *In re Katelynn Y.* (2012) 209 Cal.App.4th 871, the court stated: "By amending sections 361.5 and 388, subdivision (c), the Legislature codified existing case law that had allowed the court to terminate reunification services before the prescribed time period expired (*In re Aryanna C., supra*, 132 Cal.App.4th 1234; *In re Derrick S.* (2007) 156 Cal.App.4th 436, 448–449; *Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872.), and provided the vehicle by which a party could seek to have services terminated early. (See §§ 361.5, subd. (a)(2), 388, subd. (c); Stats. 2008, ch. 457, §§ 1.5, 2.)" (*Id.* at pp. 878–879.) The court then added: "At the same time, the amended statute limited the court's discretion to terminate services early by requiring a hearing and a finding by clear and convincing evidence that certain circumstances exist, including the substantial likelihood reunification will not occur with a parent. (§ 388, subd. (c)(1)(B), (3).)" (*Id.* at p. 879.) While we do not agree the Legislature "codified" *Aryanna C.* and *Derrick S.*, we do agree the Legislature limited the courts' discretion to terminate services early. We also agree with *Katelynn Y.*'s holding that a juvenile court, in ruling on a section 388 petition, may terminate services as to one parent without immediately setting a section 366.26 hearing, thus allowing the other parent to continue receiving services.

and visit the child. [¶] (C) That the parent has been convicted of a felony indicating parental unfitness."  (§ 361.5, subd. (a)(2) (A), (B), (C); see § 366.21, subd. (e)(5).)[3]

We recognize that while the Legislature amended sections 361.5, subdivision (a) and 388 in response to *Aryanna C.* and *Derrick S.*, it did not also amend section 366.21, subdivision (e)(8), which provides that if a child is not returned to the parent at the six-month review hearing, the juvenile court shall determine whether reasonable services have been provided and the court "shall order that those services be initiated, continued, or terminated."  (§ 366.21, subd. (e)(8).)  As we have discussed, in *Aryanna C.* and *Derrick S.* the appellate courts pointed to this statutory provision as additional support for their conclusion that juvenile courts had discretion to terminate services before the end of the statutory periods prescribed by the then language of section 361.5, subdivision (a).

---

[3]  The latter provision largely (but not precisely) correlates with section 366.21, subdivision (e)(5), which provides that the juvenile court can, at the six-month review hearing, schedule a 366.26 hearing within 120 days if (a) the child was removed under section 300, subdivision (g), and the court finds by clear and convincing evidence that the parent's whereabouts are "still unknown" or the parent has "failed to contact and visit the child"; or (b) if the court finds by clear and convincing evidence that "the parent has been convicted of a felony indicating parental unfitness."  (§ 366.21, subd. (e)(5).)

Subdivision (e)(3) of section 366.21 also allows a juvenile court at the six-month review hearing to set a 366.26 hearing within 120 days if the child is *under* the age of three or is under the age of three and part of a sibling group and if the court finds by clear and convincing evidence that the parent "failed to participate regularly and make substantive progress in a court-ordered treatment plan."  (§ 366.21, subd. (e)(3).)  This provision, allowing for the setting of a 366.26 hearing on a finding of failure to participate in and make progress in a treatment plan, is not inconsistent with the Legislature's intent in amending section 361.5 or, specifically, with the language of subdivision (a)(2).  Section 361.5 provides for only six months of services if the child is under three or for an entire sibling group if one of the group is under three.  (§ 361.5, subds. (a)(1)(B) [child under three], (C) [entire sibling group].)  Accordingly, under the statutory scheme, the specified six-month period of services will not be "terminated" at the six-month hearing on the setting of a 366.26 hearing; rather, the specified period of time for services will simply have ended.  Thus, the six-month hearing termination provisions set forth in section 361.5, subdivision (a)(2), can be harmonized with the provisions of section 366.26, subdivision (e), allowing for the setting of a section 366.26 hearing at the six-month hearing.

11

However, section 366.21, subdivision (e)(8), must be read in light of the Legislature's subsequent amendments to 361.5, subdivision (a), and section 388, subdivision (a)(2). These newer provisions implement the Legislature's explicit intent to overrule *Aryanna C.* and *Derrick S.*, in part, and to make the time periods in section 361.5, subdivision (a)(1) mandatory, subject to early termination only through a section 388 petition or at the six-month review hearing as expressly provided for in section 361.5, subdivision (a)(2)(A), (B) and (C). (§ 361.5, subd. (a)(2); see generally *J.P., supra,* 229 Cal.App.4th at pp. 121–122, 123–124.) Our principal task in reading statutory provisions is to heed the Legislature's intent, and we have no doubt as to its intent in enacting the 2008 amendments to sections 361.5 and 388. (See *Smith v. Superior Court* (2006) 39 Cal.4th 77, 83; *Benson v. Workers' Comp. Appeals Bd.* (2009) 170 Cal.App.4th 1535, 1543.) These later enacted and more specific statutory provisions are controlling. (See *State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 960–961.)

We therefore do not agree with the Department that the juvenile court had the broad discretion to terminate services recognized in *Aryanna C.* and *Derrick S.* The 2008 amendments vitiated the most significant holdings of these two cases and make it clear the six- and 12-month reunification periods in section 361.5, subdivision (a)(1), are mandatory and can only be cut short through the procedure set forth in section 388 or at the six-month review hearing if the court finds by clear and convincing evidence one of three circumstances exists.[4] (§ 361.5, subd. (a)(1), (2).)

***Harmless Error***

The Department lastly maintains any error by the juvenile court in terminating reunification services in the absence of a section 388 petition was harmless. While it may

---

[4]  Indeed, the intent of the Legislature is so clear we must express concern that, some eight years after these statutes were amended, the Department continues to rely on *Aryanna C.* and *Derrick S.* for the proposition that juvenile courts have inherent discretion to terminate reunification services at any time. We are equally concerned that, in the trial court, Mother's counsel never took issue with the Department's erroneous view of the law.

12

be that in some cases failure to comply with section 361.5, subdivision (a)(1) and (2), may be harmless, that is not the case here.  The juvenile court was laboring under a misapprehension as to the proper legal standard and neither acted pursuant to a section 388 petition nor made any finding, let alone by clear and convincing evidence, required to terminate services at a six-month review hearing under section 361.5, subdivision (a)(2).

We have already summarized the report and addendum prepared by the Department for the six-month review hearing.  After the Department's witness and Mother testified, the deputy county counsel representing the Department told the juvenile court the applicable standard to terminate services at the six-month hearing was whether there was a "substantial probability that the children could be returned to their parent in the next six months."  The court then observed that points and authorities it had received "indicated that the Court at any time can terminate services previously ordered upon a finding that the likelihood of reunification is extremely low" and that was "the standard that the department" was asking the court "to look at."

However, as we have discussed, that view of the juvenile court's discretion is simply not the law.  The 2008 amendments to sections 361.5 and 388 significantly narrowed the court's discretion to terminate reunification services prior to the end of the six- and 12-month periods specified by section 361.5, subdivision (a)(1)(A) and (B).  Subdivision (a)(2) of section 361.5 allows for the early termination of services in two ways, by way of a section 388 petition, or at the six-month review hearing, without a section 388 petition, *if* the court "finds by clear and convincing evidence one of the following: [¶] (A) That the child was removed initially under subdivision (g) of Section 300 and the whereabouts of the parent are still unknown. [¶] (B) That the parent has failed to contact and visit the child. [¶] (C) That the parent has been convicted of a felony indicating parental unfitness."  (§ 361.5, subd. (a)(2) (A), (B), (C).)

Here, the juvenile court denied services, ultimately, because it was of the view it had the discretion to do so and, specifically, because, as of the six-month hearing, Mother had done next to nothing towards meeting her case plan.  When the court and Mother's

13

counsel discussed the fact Mother was now looking at a prison sentence, counsel directed the court's attention to section 361.5, subdivision (e)(1), which provides that reasonable services must be offered to an incarcerated parent unless the court determines, by clear and convincing evidence, the services would be detrimental to the minor. (§ 361.5, subd. (e)(1); see generally Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure, *supra*, § 2.129[5] at pp. 2-481–2-484.) The court responded: "Do you think that section trumps all the other sections? So if somebody—I was going to cut out—. . . and then she commits a crime, goes to prison, then I have to offer services that I wasn't going to offer anyway?" It seems apparent that Mother's incarceration was not pivotal to the juvenile court's termination of services. Rather, what was most important was that Mother had done precious little for the first six months of services and the court believed it had the inherent discretion, in such circumstances, to immediately terminate services.

As we have recounted, the court made numerous findings in connection with terminating services and setting a section 366.26 hearing. However, the court made no finding that any of the three situations set forth in section 361.5, subdivision (a)(2)(A), applied—i.e., "that the child was removed initially under subdivision (g) of Section 300 and the whereabouts of the parent are still unknown" *or* "that the parent has failed to contact and visit the child" *or* "that the parent has been convicted of a felony indicating parental unfitness." (§ 361.5, subd. (a)(2)(A), (B), (C).) It is possible the last of these situations may apply here. But that is not a finding we can or should make in the first instance, particularly given the heightened clear and convincing standard.

**DISPOSITION**

The petition is granted. Let a writ of mandate issue directing the juvenile court to vacate its orders terminating reunifications services and setting the case for a 366.26 hearing. This opinion is final in this court on filing. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2)(A).)

_____

Banke, J.


We concur:


_____

Humes, P. J.


_____

Dondero, J.


A148627, *M.C. v. Del Norte County Superior Court*


15

Trial Court:   Del Norte County Superior Court

Trial Judge:   Hon. William H. Follett

Counsel:

Law Offices of Jennifer Savoy, Jennifer Savoy for Petitioner.

No appearance for Respondent.

Elizabeth Cable, County Counsel; Sean Collins, Deputy County Counsel, for Real Party in Interest.