Filed 6/24/22  Frances C. v. Superior Court CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| Frances C.,<br><br>　　　Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SOLANO COUNTY,<br><br>　　　Respondent;<br><br>SOLANO COUNTY HEALTH AND SOCIAL SERVICES DEPT.,<br><br>　　　Real Party in Interest. | A164960<br><br>(Solano County<br>Super. Ct. No. J44964) |

Frances C. (Mother) petitions this court for extraordinary relief from dependency court orders that terminated her reunification services after six months and set a hearing under Welfare and Institutions Code section 366.26 to select a permanent plan for her 10-year-old son, J.C. (Minor).[1]  Mother argues there was not sufficient evidence to support the juvenile court's termination of reunification services at the six-month mark.  We agree, and we shall grant her petition.

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

A.    *Previous Dependency History*

In 2011, before Minor was born, a petition was filed in Alaska on behalf of Mother's oldest child, Minor's half-brother (Brother), who was taken into the custody of Anchorage County Child Welfare Services.  Mother completed reunification services and Brother was returned to her care 14 months later, when Minor was a few months old.  Mother subsequently gave legal custody of Brother to a friend, with whom Brother continues to reside.

In 2018, a petition was filed on behalf of Minor in Alameda County Superior Court, and Minor was detained.  The following allegations were sustained at the jurisdiction hearing in 2019:  while Mother was at work and Minor was in the care of her boyfriend J.D., Minor sustained non-accidental life-threatening injuries, including devastating brain injury that resulted in the loss of function of much of the left side of Minor's brain, affecting his speech and language ability; that during Minor's hospitalization, older injuries were discovered including three back rib fractures and a kidney injury; that in 2016 while Mother was asleep on the couch Minor sustained second degree burns on his face, chest, and arms after pulling a pot of hot water on himself; and that Mother's dependency history in Alaska involved Brother sustaining severe injuries while in the care of Mother's then-boyfriend.[2]  Reunification services were offered to Mother, and Minor was returned to her care in January 2020 under a plan of family maintenance services.  The matter was transferred to Solano County, where Mother and

_____

[2] J.D., the boyfriend who abused Minor in 2018, is the father of Minor's younger half-sister.  The boyfriend who abused Brother several years before is Minor's alleged father.  He is not a party to this writ petition.

Minor were living, and in December 2020, family maintenance services were terminated and Mother was reunified with Minor.

B.    *June-July 2021 – Petition and Detention*

On June 8, 2021, the Solano County Health and Social Services Department (Department) filed a petition under section 300 on behalf of Minor, then nine years old, and his half-sister (Sister), then about two years old.[3]  As relevant here, the petition alleged that Minor was at substantial risk of serious harm and/or neglect as a result of Mother's failure to adequately protect and supervise him, and as a result of Mother's inability to provide regular care for him because of her mental illness.  (§ 300, subd. (b)(1).)  The petition alleged three sets of facts:

First, Mother dropped off Minor at a hospital without making appropriate arrangements for him.  When he was later transported to a children's hospital, Mother was contacted and declined to respond in person, stating that she needed to address her own mental health issues.  Minor was medically fragile as a result of injuries and brain trauma, and Mother reported she could not meet his needs and behaviors in her home upon his release from the hospital, which left Minor without a caregiver.[4]  In addition, in May 2021 Mother had missed three medical appointments for Minor.

---

[3] In her writ petition, Mother does not challenge the juvenile court's orders regarding Sister; we discuss the facts and orders as they pertain to Sister as background to the parties' arguments concerning Minor.  We do not discuss allegations in the Department's petition that pertain only to Sister or the children's alleged fathers.

[4] The Department later provided details about Minor's medical conditions, which required constant care and treatment.  His diagnoses included cerebral palsy, intellectual disability, and dysphagia—oropharyngeal phase (difficulty swallowing).  He had a gastrostomy tube (G-tube) in place to be used for feeding when he was not eating or drinking

Second, Mother had mental health conditions for which she failed to seek treatment and which periodically leave her incapable of caring for and supervising Minor. Mother's mental health decline was evidenced by increasing symptoms of depression, anxiety and anger outbursts, and a recent diagnosis of Posttraumatic Stress Disorder. It was reported that Mother "disassociates and has hour-long episodes of crying under the stress of attending to [Minor's] needs."

Third, Mother had current issues of domestic violence with her current partner. In May 2021, Mother's partner sustained a fracture to her hand after Mother kicked a door closed during an argument in the home, and it was reported that on different occasions Mother threw objects in the home.

At the initial hearing on June 9, the juvenile court ordered Minor detained.[5] The court ordered supervised visitation between Mother and Minor once a week for one hour.

Then, on July 8, 2021, the Department filed an amended petition, adding allegations that in late June Mother had engaged in a domestic violence incident with her partner in the presence of Sister, and that the safety plan that Mother and her partner had agreed to had not successfully reduced the risk of harm to Sister. The court then ordered the detention of Sister, but the Department's attempts to detain her were unsuccessful, and Sister remained in Mother's care.

---

appropriately. Minor had been placed in a foster home upon his release from the hospital.

[5] Sister was not ordered detained at that time. The report prepared by the Department before the hearing noted that Mother had arranged for Mother's current partner to care for Sister and that the Department assessed that Sister was currently safe.

4

C. *July-August 2021 – Jurisdiction and Disposition*

According to the report prepared by the Department for the jurisdiction/disposition hearing, Minor had been in six different placements since his detention in June. Five were emergency placements resulting from the difficulty of meeting Minor's needs. Minor's medical needs included using a G-tube for periodic feeding in view of his difficulty swallowing, and limited mobility, requiring use of a wheelchair. Minor's behaviors included smearing his feces on himself and the walls, using profanity and sexualized language, hitting and biting, and having trouble controlling his emotions.

The Department reported that with Minor being placed in six placements over a short period, including one in Fresno, Mother was unable to have in person visits, but was having phone calls with Minor. Mother told the Department that she had been offered an in-person visit with Minor in June, and that she was informed of the visit only one hour in advance and could not attend because she had job training and daily therapy.

The Department reported that Mother continued to struggle with her mental health, and was engaging in domestic violence in the presence of the children. Based on Mother's behavior and statements made by her recent live-in partner, the Department believed Mother was abusing substances.

At a contested jurisdiction/disposition hearing, held on August 19, 2021, the juvenile court sustained the allegations against Mother as to Minor and Sister with respect to section 300, subdivision (b)(1), as further amended with respect to the facts concerning domestic violence.[6]

---

[6] The second amended petition alleged that Mother has had issues of domestic violence with former partners and her current partner; that after the filing of the original petition there were additional domestic violence concerns, including arguments in the presence of Sister; that Mother's partner expressed concerns about Sister's safety that could not be mitigated

5

The court adopted a case plan for Mother with four service objectives: (1) Stay free from illegal drugs and show your ability to live free from drug dependency and comply with all required drug tests; (2) Develop positive support systems with friends and family; (3) comply with medical or psychological treatment; (4) remove identified dangers to your children's physical health. Mother's responsibilities were to engage in counseling, parenting education, and substance abuse testing, with substance abuse treatment if test results were positive. The court ordered supervised visitation between Minor and Mother at least once a week for one hour per week.

The court continued the protective custody warrant for Sister and scheduled a six-month review hearing for February 15, 2022.

D.    *February-March 2022 – Department Seeks to Terminate Reunification Services*

On February 1, 2022, the Department filed a status review report recommending that the court terminate family reunification services and set a permanency planning hearing under section 366.26 as to Minor. The Department also filed a section 388 petition to terminate reunification services, which referred to the status review report.

The Department reported that Mother had not had any in-person visits with Minor. In August 2021, the day after the contested jurisdiction/disposition hearing, Minor was placed at a non-foster care treatment home in Riverside County, where he remained at the time of the contested hearing. Mother expressed that she is comfortable with the current

---

in light of Mother's reluctance to allow the Department to have in-person contact with Sister; and that due to the ending of the relationship between Mother and partner, the agreed-upon safety plan was no longer a viable option to safely maintain Sister in Mother's home.

placement, where Minor was happy, safe, and comfortable and his needs were being met. The Department began contacting Mother to arrange for in-person visits in September, after Minor was stable in the placement. Since then, the Department tried to arrange visits, but Mother would not cooperate with agreed-upon dates and times, and failed to show up for a plane flight after a ticket was purchased for her to travel to see Minor in October 2021. Mother's refusal to visit was based on her fear that the protective custody warrant for Sister would be enforced. Although Mother reported to the Department that she spoke with Minor weekly by phone, staff at Minor's placement did not confirm Mother's report.

The Department reported that Mother was in compliance with the counseling portion of her case plan. She was meeting regularly with a psychiatrist, taking all prescribed medications, and discussing the trauma she had experienced and how it affects her and her children.

The Department reported that Mother was in partial compliance with the parenting education portion of her case plan. Mother initially refused to participate on the grounds that she had taken classes in the past and did not feel additional classes were necessary. She provided the Department a certificate reflecting her completion of a course in 2019. In December 2021, the social worker explained that the case plan included education to address concerns that she could not manage Minor's behaviors, and that classes would focus on giving her tools and strategies to respond to Minor's needs. Mother then told the social worker she would "get into the class so I can sharpen my skills and better understand and care for [Minor's] needs." She enrolled in a group class, and was scheduled to complete it in late January. That group class would be followed by one-on-one training to address issues related to special needs children. Mother expressed that she misses Minor

and wants him home, but that she was not yet able to provide care for Minor or meet his specific needs. She informed the social worker that she would need certain services to be in place when Minor returns to her care, which is not something a parenting class could offer.

The Department reported that Mother was not in compliance with the drug testing portion of her case plan. The Department reported that Mother had missed scheduled tests before the jurisdiction/disposition hearing. Since then, Mother had been asked to test but had refused because she felt drug testing was a waste of time and because she was afraid she would be arrested because of the outstanding protective custody warrant for Sister. Starting in December 2021, Mother had expressed willingness to test if there was a guarantee that she would not be arrested. When Mother was told that the testing center checked names only to see if testing had been scheduled, Mother reported she had lost her driver's license and not yet received a replacement. The social worker told Mother that in that case, Mother would have to meet with the social worker in person to have her picture taken, but Mother was unwilling to come to any Department office because of her concerns about Sister.

A combined six-month review and section 388 contested hearing was held on March 30, 2022, at which the court heard testimony from the social worker. The social worker testified as to attempts to arrange visitation after October 2021. The social worker consulted with her manager and determined in late January or early February that the Department would permit an in-person visit for Mother even with the outstanding warrant, and Mother told the social worker that she was open to traveling. The social worker consulted with Mother and Minor's placement facility about visits in March, and agreed that a visit would take place on March 16. But the social worker was out

8

sick, and could not complete the paperwork, so the visit did not take place. The social worker testified that she was currently working with Mother and the facility to arrange an in-person visit.

The social worker also testified that on each of her visits to the facility, which had taken place each month since December 2021, she spoke with staff about Mother's contacts with Minor, and they always said she called "occasionally." Staff reported that Minor enjoyed talking to Mother, that he asked about Sister, and that Minor did not exhibit any negative behavioral changes after the calls. The social worker testified that when she asked for more specific information about the frequency of calls, she was told that the facility has a record of her contacting Minor three times since his arrival in August. The house administrator informed the social worker that the facility did not have a written log of calls, and that "they just went through the phone system to look for her number and they saw the three calls." Apart from phone calls, Mother and Minor participated in a child and family team meeting over Zoom in October 2021.

The parties stipulated that Mother's parenting instructor had been contacted and confirmed that Mother had completed her group parenting class but had not yet begun one-on-one training. The parties also stipulated that although Mother was not willing to place Sister in the foster care system, Mother had identified two placement options for Sister that had not worked out, and that Mother was exploring other options.

Counsel for the Department argued that reunification services should be terminated because there was clear and convincing evidence that Mother's action or inaction, in failing to visit Minor regularly and in not making substantive progress in her case plan, created a substantial likelihood that reunification would not occur. Minor's counsel agreed with the Department.

9

Mother's counsel argued that the evidence did not show a substantial likelihood that reunification would not occur by the time 12 months had passed. She pointed out that there should be no expectation that Mother would be ready to reunify at six months, and argued that in view of what Mother had already accomplished, there was much that Mother could do in the next few months. She also noted that although Mother had not fully cooperated with the Department, this was not a case in which a parent had completely failed to cooperate.

At the conclusion of the hearing, the juvenile court granted the Department's section 388 petition, based on its findings that reasonable services had been provided, and its findings by clear and convincing evidence that because of "significant failure" by Mother with respect to visitation and substantive progress on her case plan there was not a substantial likelihood that Minor could be returned to Mother within six months. The court stated that Mother had made some "good progress" on her case plan, but that the progress was "not substantive in light of the risks at hand." The court stated several times that the issues of progress on the case plan and visitation could be rectified, and stated that it would be "more than happy to revisit" the issues, but nevertheless terminated reunification services, and set a permanency planning hearing under section 366.26 for July 26, 2022. This writ petition followed.

## DISCUSSION

A. *Disentitlement*

The Department argues that we should dismiss Mother's petition under the disentitlement doctrine because of Mother's failure to comply with the juvenile court's detention order, protective custody warrant, and jurisdiction order with respect to Sister. We decline to do so.

10

As a reviewing court, we have the "inherent power to dismiss an appeal when the appealing party has refused to comply with the orders of the trial court." (*In re Z.K.* (2011) 201 Cal.App.4th 51, 63.) So-called "[a]ppellate disentitlement" is " 'a discretionary tool that may be applied when the balance of the equitable concerns make it a proper sanction,' " which is used in dependency proceedings "only in cases of the most egregious conduct by the appellant that frustrates the purpose of dependency law and makes it impossible for the court to protect the child or act in the child's best interests." (*Ibid*; see also *In re E.E.* (2020) 49 Cal.App.5th 195, 211 ["[d]isentitlement should be reserved for those cases where the parent's violation of court orders makes it impossible for the juvenile court to protect the child's best interests"].)

We recognize that Mother's failure to comply with the orders pertaining to Sister affects the juvenile court's ability to protect Sister's interests.[7] (See *In re Kamelia S.* (2000) 82 Cal.App.4th 1224, 1229 [by absconding with and secluding child in violation of juvenile court orders, parent "undermines and frustrates the entire purpose of the dependency law" because "[i]t is virtually impossible for the court to extend its protection" to a minor who is unavailable at an unknown location].) But as to Minor, the effect of Mother's failure to comply with orders pertaining to Sister is limited to Mother's noncompliance with the parts of her case plan for Minor that Mother fears might lead to her arrest and Sister's detention. Thus Mother refused to appear for drug testing at Department-specified locations, to meet face-to-

---

[7] We note, however, that the social worker testified that Mother participated in monthly video visits with a social worker concerning Sister. Mother made sure the social worker could see Sister during those visits, and Sister has appeared to be in good health.

face with the social worker at the Department office, and to visit Minor in person.

However, even though Mother has not fully complied with her case plan, she has complied in part. (See *M.C. v. Superior Court* (2016) 3 Cal.App.5th 838, 844 (*M.C.*) [declining to apply the disentitlement doctrine where parent "made some, albeit minimal, attempt to comply with her case plan"].) And the Department has not shown that Mother's failure to fully comply with her case plan has prevented the juvenile court from protecting Minor. In these circumstances, we will not apply the disentitlement doctrine to dismiss Mother's challenge to the juvenile court's early termination of reunification services.

B.      *Merits*

We turn now to Mother's argument that there was insufficient evidence to support the termination of reunification services at the six-month review.

1.      *Applicable Law and Standard of Review*

The Welfare and Institutions Code provides that as a general matter 12 months of reunification services "shall be provided" to the parent where a detained child is three years of age or older. (§ 361.5, subd. (a)(1)(A).) The framework for terminating services before the end of the 12-month period is set forth in subdivision (a)(2) of section 361.5. (See *M.C.*, *supra*, 3 Cal.App.5th at pp. 842-843 [discussing the circumstances in which reunification services may be terminated under § 361.5, subd. (a)(2)].) As relevant here, services may be terminated on the basis of a petition filed under subdivision (c) of section 388, alleging that "[t]he action or inaction of the parent or guardian creates a substantial likelihood that reunification will not occur, including, but not limited to, the parent's or guardian's failure to visit the child, or the failure of the parent or guardian to participate regularly

12

and make substantive progress in a court-ordered treatment plan." (§ 388, subd. (c)(1)(B); § 361.5, subd. (a)(2).) The early termination of services requires the juvenile court to find by a preponderance of the evidence that reasonable services have been offered or provided, and to find by clear and convincing evidence that the parent or guardian's inaction creates a substantial likelihood that reunification will not occur.[8] (§ 388, subd. (c)(3).)

We review the juvenile court's decision to grant or deny a section 388 petition for abuse of discretion, and we review the factual findings underlying the decision for substantial evidence. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415-416.) "Substantial evidence is evidence that is 'of ponderable legal significance,' 'reasonable in nature, credible, and of solid value,' and ' "substantial" proof of the essentials which the law requires in a particular case.' " (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1006 (*O.B.*).)

We "must account for the clear and convincing standard of proof when addressing a claim that the evidence does not support a finding made under this standard," such as the challenge here to the juvenile court's decision to terminate reunification services. (*O.B., supra,* 9 Cal.5th at p. 1011; see § 388, subds. (c)(1)(B) & (c)(3).) "When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of

---

[8] Mother does not contest the juvenile court's finding that reasonable services were offered in this case.

13

witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*O.B.*, *supra*, 9 Cal.5th at pp. 1011-1012.)

2. *Analysis*

To prevail on its section 388 petition, the Department was required to present clear and convincing evidence that because of Mother's failure to visit Minor, or Mother's failure to participate regularly and make substantive progress in her case plan, there was a substantial likelihood that reunification would not occur. (§ 388, subds. (c)(1) & (3).) The Department did not meet its burden.

In considering the issue of visitation, we bear in mind that since the jurisdiction/disposition hearing, Minor has been placed in Riverside County, at a considerable distance from Mother. Although Mother had no in-person contact with Minor since his detention, and had failed to show up for a plane flight that the Department had arranged, she had positive telephone contact with him at least three times, and had participated in a Zoom child-and-family team meeting with him. After Mother reported to the Department that despite the outstanding warrant for Sister she was willing to get on a plane to see Minor, plans were made for an in-person visit between Mother and Minor in mid-March. That visit did not take place, not because of Mother, but because the social worker was out sick and could not complete the paperwork. And at the time of the hearing on the section 388 petition at the end of March, plans were again being made for a visit. This is not substantial evidence to support a finding by clear and convincing evidence that Mother's failure to visit Minor creates a substantial likelihood that reunification will not occur, particularly in view of Mother's statements to the Department that she misses Minor and wants him home, and her recognition

14

that she will need supportive services when he returns to her care. (§ 388, subds. (c)(1) & (3).)

In considering Mother's participation in her case plan and substantive progress, we bear in mind that the parent of a child three years or older is generally provided 12 months of reunification services. (§ 361.5, subd. (a)(1)(A).) This means that what counts as "substantive" progress will differ over time. Here, at the six-month review, Mother had fully complied with her case plan objective as to her mental health and had partially completed the parenting education portion of her case plan. Several months remained for Mother to complete the remainder of the education objective, which involved one-to-one training. Mother had expressed particular interest in and need for that one-to-one training, and nothing in the record suggested that she would not complete it. Mother was not in compliance with the drug-testing case objective, but some progress had been made: Mother initially refused to drug test but eventually said she would test if she could do so without risking Sister being detained. Although she had not completed any testing at the time of the hearing on the section 388 petition, several months remained for Mother to test and, if necessary, participate in substance abuse treatment. This evidence does not support a finding that Mother failed to make substantive progress in her case plan, much less support a finding by clear and convincing evidence that Mother's failure to participate regularly and make substantive progress in her case plan creates a substantial likelihood that reunification with Minor will not occur. (§ 388, subds. (c)(1) & (3).)

## DISPOSITION

The petition is granted. Let a peremptory writ of mandate issue directing the juvenile court to vacate its orders terminating reunification services and setting the case for a section 366.26 hearing. Our decision is

15

final as to this court immediately.  (Cal. Rules of Court, rules 8.450(a), 8.490(b)(2)(A).)

_____
Miller, J.

WE CONCUR:


_____
Richman, Acting P.J.


_____
Stewart, J.


A164960, *Frances C. v. Superior Court*

17