Filed 3/17/26  In re M.M. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.M. et al., Persons Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>R.M.,<br><br>Defendant and Appellant. | F090480<br><br>(Super. Ct. Nos. JD147471-00, JD147472-00)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Christie Canales Norris, Judge.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kendra L. Graham, County Counsel, and Raymond J. Aubele, Jr., Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Franson, Acting P. J., Meehan, J. and De Santos, J.

Appellant R.M. (father)[1] is the father of now six-year-old Andrew M. and 13-year-old M.M. (the children), who are the subjects of a dependency case. Father argues the juvenile court abused its discretion pursuant to Welfare and Institutions Code[2] section 360 when it ordered father to submit to drug and alcohol testing as part of his reunification case plan. Accordingly, father requests the disposition order's requirement that he submit to drug and alcohol testing be stricken from his reunification case plan. The Kern County Department of Human Services (department) agrees, as do we. We strike the juvenile court's order as to the requirement that father submit to drug and alcohol testing. In all other respects, the order is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

Father and E.O. (mother)[3] have five children together: A.M., Robert M., Matthew M., M.M. and Andrew M. Mother was living in a home with AM., M.M. and Andrew. Father was living in a trailer on the same property with Robert and Matthew. Andrew and Matthew are believed to be autistic and generally nonverbal.

A.M. was on probation for kicking mother. On July 29, 2025, the department received a referral from A.M.'s probation officer after the officer attempted to contact A.M. at mother's home and found it was in an unlivable condition, posing a health and safety hazard to A.M., Andrew and M.M., who were living with her. The referral alleged general neglect of A.M., M.M., Robert, Matthew and Andrew, stating, " 'The home is filthy. There are clothes and trash everywhere. There is rotten food. The sink is clogged. There is no food and roaches come out of the fridge. There is what looks like feces on the floor. Water does not come out of the sink spout in the restroom. The

---

[1] The juvenile court elevated father to the status of presumed father of the children.

[2] All further statutory references are to the Welfare and Institutions Code.

[3] Mother is not a party to this action.

2.

children are dirty, and their heads are infested with lice. Roaches, ants, other insects flying around the home. Some of the windows are boarded with cardboard and duct tape. There is mold and webs with eggs in them, and maggots at the front door.' " She also stated the children had not eaten any food that day and reported to going days without eating, had been infested with lice for years, had not bathed in over a week, had never been to a dentist or doctor, slept on a dirty mattress stained with urine, and did not have access to a functional bathroom. The probation officer stated A.M., Andrew and M.M. were living in the home, but that she saw Robert and Matthew run out of the back of mother's property and drive away in a white truck with father when she arrived. Andrew and M.M. were removed from mother's home and taken to a children's center.

On July 30, 2025, mother was arrested and charged with child endangerment (Pen. Code, § 273a , subd. (a)).

### Social Study Report

The August 4, 2025 social study report reflected the probation officer's observations. It also stated Andrew appeared to have autism and was nonverbal. M.M. told the children's center that he was potty trained and that they were required to go to the bathroom outside mother's home. The children were extremely filthy and appeared not to have bathed for days, and had "one of the worst cases of lice [the staff at the children's center] had seen." M.M. told the children's center staff she had never been to school and did not know how to read or write. M.M. stated she, Andrew and A.M. slept on one dirty mattress in the home. She stated it was stained and had urine on it because Andrew peed on it. She told the social worker she and her siblings had lice for "years and years." She said mother used to try to get rid of it, but stopped trying after so many years, but that her head did not feel itchy anymore because she was " 'used to the feeling,' " but that Andrew hated the feeling of the lice on his head. She stated the home had been in the same condition for years.

M.M. told the social worker her parents were still in a relationship, but that father currently slept in a trailer in the back of the property " 'because he is not dirty.' " She told her that father's trailer was " 'very clean' " and that father hates mother's home and how dirty it was, and that father often demanded mother clean up the home. She stated she and A.M. used to clean the home but stopped years ago, and that mother was too tired when she got home from work, so the home just continued to get worse. She told the social worker mother may have mental health issues because she would " randomly crash out and cry.' " She stated mother did not discipline the children. M.M. told the social worker that father did not live with them but would come to the home and fight with mother for money or " 'other stuff because she won't do something for him.' "

The report stated that mother confirmed Robert and Matthew resided with father. Mother stated father had not been inside and seen the condition of her home recently. Mother stated A.M., M.M. and Andrew never went to father's home, as he only cared for Robert and Matthew. Father confirmed to the social worker he only cared for Robert and Matthew at his home. Father stated he was unaware of the condition of mother's home, as he was not allowed inside her home and had issues with mother. He stated he was a strict father and M.M. and A.M. did not like that. He told the social worker M.M. and A.M. refused to allow him near mother's home and that A.M. and M.M. had anger issues. He stated mother supported A.M.'s and M.M.'s bad behaviors, but that Robert and Matthew did not stay at mother's home and only resided with him, because mother's home was very dirty.

The department had previously investigated the family multiple times, including a 2020 physical abuse allegation that was substantiated against mother and a 2022 general neglect allegation substantiated because a physical altercation occurred in mother's home (before father moved out), during which father was determined to be intoxicated. Neither parent had any prior criminal history.

4.

The report stated that M.M. told the social worker that mother did not consume substances or alcohol, but that father previously used to drink a lot of beer. She stated father would fall down the stairs or throw glass bottles on the floor when he was intoxicated. She stated that father did not currently drink alcohol, and that the last time she saw him consume alcohol was approximately four years prior. M.M. stated that she felt safe with mother and wanted to go home but was afraid of father due to " 'bad things he has done in the past.' " She stated that during an argument between her parents, father was intoxicated and attempted to commit suicide in front of A.M. by jumping out of a moving car. She stated father was " 'problematic' " and mean, and would hit them with belts, shoes, or a stick from outside. She stated the last time he hit one of the children with an object was approximately two months prior when he hit Robert with something that left a small mark, but that the mark went away the following day. Mother denied she or father had any alcohol use or substance abuse issues. Mother stated that approximately four years prior, father had become intoxicated and attempted to take mother's car. She stated father had began to drink excessively when he became depressed while he was sick, lost a lung, and was on a lot of medication. Mother stated that after she refused to allow father to take her car, he became aggressive, and she contacted law enforcement. Mother stated father no longer consumed alcohol and was a "good guy now."

The social study report stated reasonable services were provided to prevent or eliminate the need for removal of the children from father's and mother's custody. The report recommended the children be removed from the physical custody of mother and father.

On August 1, 2025, a social worker completed a home inspection for father and found his home was clean and safe and that Robert and Matthew were well cared for. Matthew was autistic and nonverbal, but Robert reported they received good care from father and that he felt safe with him.

5.

On August 1, 2025, the department filed a petition on behalf of Andrew and M.M. pursuant to section 300, subdivisions (b)(1) and (i) alleging mother's home was filthy, that there was no plumbing, working refrigerator, or functional bathroom and that the children were dirty, infested with lice, sleeping on a urine-covered mattress, had not received medical or dental care, and that father knew the conditions in which the children resided and allowed them to remain there.

On August 4, 2025, the juvenile court held a detention hearing. Father was found to be the children's presumed father. The court made a prima facie finding that the children were described by section 300. The court ordered the children be detained from mother. Father requested placement of the children, or alternatively, requested the juvenile court grant the department discretion to place the children with him. The court granted the department discretion to place the children with father, if deemed appropriate. The court found continuance in the home of the mother and father would be contrary to the children's welfare and ordered supervised visits with the parents twice a week for two hours each.

On August 4, 2025, a social worker spoke with father to review his voluntary case plan, which consisted of father completing a 14-week child neglect/parenting course and submitting random drug and alcohol tests to the department, and if a test was positive, to enroll in substance abuse counseling. Father told the social worker that he used to consume alcohol when he was younger, but had been sober for approximately 30 years. He stated, however, that approximately three years prior to the petition, he suffered health issues and fell into depression that caused him to begin drinking again and was aware of the incident where law enforcement was called to mother's home due to him being intoxicated. He stated he no longer had issues with alcohol and was willing to test for the department. He stated he used to smoke marijuana but had not done so in years. Father provided the department with two negative drug and alcohol tests.

Father reported that approximately one year prior to the petition, he and mother made a " 'deal' " to have Robert and Matthew stay in his care while A.M., M.M. and Andrew stayed with mother, because they were more bonded to her. He stated mother had a lot of problems and this was the reason he did not see A.M., M.M. and Andrew often. Robert and Matthew had not attended school in more than one year while in father's care and none of the children had been to a doctor or dentist in over three years.

Father denied knowing how dirty A.M., M.M. and Andrew were or how dirty mother's home was. He stated he saw A.M., M.M. and Andrew approximately once per week but it was from far away, as he never went inside mother's home, so he could not see that they were dirty or had lice.

Robert stated he had not been inside mother's home and had not been close enough to A.M., M.M. and Andrew to observe their condition. He stated he and Matthew were only outside mother's home on the day the probation officers came because they were helping father care for the animals that lived on the property.

The department recommended the children be removed from mother, and that father's request for custody of the children be denied. It recommended both parents receive reunification services. For father, the recommended reunification services included a 26-week parenting/neglect class, and that he enroll in substance abuse treatment upon a positive test.

On September 17, 2025, the juvenile court held a jurisdiction and disposition hearing. The court noted it read and considered the social study reports. Mother testified her home was now clean, the sink fixed and floor retiled, the bugs exterminated, that she got a new microwave, that the children no longer had lice, that she was starting therapy, and that she had a mental health assessment. Father testified that he loved the children, had been unaware of the condition of mother's home, and that he had checked on the children as best he could but that mother had not let him in her home. The department argued for the court to sustain the petition. Mother argued the petition should be

7.

dismissed and the children returned to her care because the home was now clean and the children no longer had lice. Father argued for the petition to be dismissed and the children to be released to his care because he had been unaware of the condition of mother's home and had shown he was able to adequately care for Robert and Matthew. Counsel for the children submitted on the department's recommendations but noted M.M. was anxious to return to mother's care.

The juvenile court sustained the petition. It noted the children were inadequately cared for by mother, had lived in unhealthy conditions for years, had never been to a dentist or doctor, went days without eating, were dirty, and that father had some knowledge of mother's neglect of the children, as he frequented the home and could see the state of the exterior of it and of the children's conditions, but disregarded them.

At disposition, father argued drug and alcohol testing should not be included in his reunification case plan. Mother and minor submitted on the department's recommendations. The department argued to include drug and alcohol testing in father's case plan. The court found the children were not Indian children pursuant to ICWA.[4] The court adjudged the children dependents of the court pursuant to section 300, subdivision (b)(1) and ordered reunification services be provided to mother and father. The court included drug and alcohol testing in father's case plan, with any positive test requiring substance abuse counseling. The court agreed there was no nexus between the current concerns and substance abuse by father but cited the 2022 investigation about the incident when father was intoxicated and father's failure to participate in services after

---

[4] Father and mother denied having any known Indian ancestry. At the detention hearing, both parents filed ICWA-020 *Parental Notification of Indian Status* forms indicating they did not have Indian ancestry. At the jurisdiction and disposition hearing on September 17, 2025, the court found no reason to know the children were Indian children but noted the department has an ongoing duty of inquiry.

that incident as the basis for ordering drug and alcohol testing. Supervised visitation with the children was ordered for mother and father.

On September 19, 2025, father timely filed a notice of appeal.

**DISCUSSION**

Father contends the juvenile court erred by including in his reunification case plan the requirement that he submit to drug and alcohol testing. The People agree, as do we.

### A. Law

"We begin with confirmation of the fundamental principle applicable here, a principle that cannot be repeated too often: 'It is difficult, if not impossible, to exaggerate the importance of reunification in the dependency system. With but few exceptions, whenever a minor is removed from parental custody, the juvenile court is required to provide services to the parent for the purpose of facilitating reunification of the family.' [Citations.] The statutory authority governing the provision of reunification services is section 361.5." (*In re Derrick S.* (2007) 156 Cal. App. 4th 436, 444, superseded by statute as stated in *M.C. v. Superior Court* (2016) 3 Cal.App.5th 838, 849.)

"With some limited exceptions not relevant here, section 361.5 requires the juvenile court to order child welfare services for both parent and child when a minor is removed from parental custody." (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1228 (*Nolan W.*).) Section 361.5 provides, "whenever a child is removed from a parent's or guardian's custody, the juvenile court shall order the social worker to provide child welfare services to the child and the child's mother and statutorily presumed father or guardians. Upon a finding and declaration of paternity by the juvenile court or proof of a prior declaration of paternity by any court of competent jurisdiction, the juvenile court may order services for the child and the biological father, if the court determines that the services will benefit the child." (§ 361.5, subd. (a).)

However, "[a] 'mechanical approach' to a reunification plan is not what the Legislature intended: 'such a plan must be appropriate for each family and be based on

9.

the unique facts relating to that family.' [Citations.] The effort must be made to provide suitable services, in spite of the difficulties of doing so or the prospects of success." (*In re Dino E.* (1992) 6 Cal.App.4th 1768, 1777.)

"The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion." (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 474; see *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.) "Of course, the juvenile court's discretion in fashioning reunification orders is not unfettered. Its orders must be 'reasonable' and 'designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300.' (§ 362, subd. (c).) 'The reunification plan " 'must be appropriate for each family and be based on the unique facts relating to that family.' " ' " (*Nolan W.*, *supra*, 45 Cal.4th at p. 1229; see *In re Basilio T.* (1992) 4 Cal.App.4th 155, 172–173.) "At disposition, the juvenile court is not limited to the content of the sustained petition when it considers what dispositional orders would be in the best interests of the children. [Citations.] Instead, the court may consider the evidence as a whole." (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311 (*Briana V.*) [order requiring the father to sexual abuse counseling was not an abuse of discretion because he did not deny the allegations regarding his registered sex offender status and violation of probation.])

"The adequacy of a reunification plan and of the department's efforts are judged according to the circumstances of each case. [Citation.] With respect to the plan itself, '[e]ach reunification plan must be appropriate to the particular individual and based on the unique facts of that individual. [Citations.]' [Citation.] 'The effort must be made to provide suitable services, in spite of the difficulties of doing so or the prospects of success. [Citation.]' [Citation.] '[T]he focus of reunification services is to remedy those problems which led to the removal of the children….' [Citation.] '[T]he record should show that the [department] identified the problems leading to the loss of custody, offered

services designed to remedy those problems, maintained reasonable contact with the [parent] during the course of the service plan, and made reasonable efforts to assist the [parent when] compliance proved difficult….' " (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1362.)

We review the propriety of court-ordered reunification services at this stage for abuse of discretion. (*Briana V.*, *supra*, 236 Cal.App.4th at p. 311; see *Nolan W.*, *supra*, 45 Cal.4th at p. 1229.) "A court exceeds the limits of legal discretion if its determination is arbitrary, capricious or patently absurd. The appropriate test is whether the court exceeded the bounds of reason." (*In re L.W.* (2019) 32 Cal.App.5th 840, 851.)

### B. Analysis

Here, we agree with the parties that the juvenile court abused its discretion when it included in father's reunification case plan a requirement that he submit to drug and alcohol testing. The requirement is arbitrary and capricious, as the record does not contain evidence that father has had issues with alcohol use since 2022 or evidence that father has ever had an issue with drug abuse.

Here, the juvenile court determined father was required to submit to drug and alcohol testing as part of his reunification plan. However, the record, as the juvenile court noted at disposition, does not contain any evidence that father had alcohol use or substance abuse issues since 2022, as the court stated,

> "I agree with the [lack of a] nexus for the drug testing. He doesn't have any history, no criminal, regarding that. [¶] … [¶] The … reference to the alcohol consumption comes from a November 14th, 2022, contact. [¶] At the end of that contact, the father had agreed to obtain counseling services and attend alcoholics anonymous, and that they had accepted differential response services. [¶] With really no new allegation—well, the family was offered the services; however, the parents did not make an effort—any efforts necessary to complete their case plan for those services. [¶] So based on that, the Court is going to order testing for the father. I thought they had completed those services. I apologize."

11.

However, there is no evidence that father abused drugs at any time; nor is there evidence that father consumed or abused alcohol after 2022. Father self-reported to the social worker that he had consumed alcohol when he was younger but had abstained for approximately 30 years until he relapsed in 2022 when suffering from health problems. However, he stated that he had again stopped drinking alcohol after that incident and was willing to submit to drug and alcohol testing. Mother and the children also told the social worker that father last had an issue with alcohol approximately four years prior to the petition when suffering from medical issues. Further, the record shows father submitted two recent negative drug and alcohol tests taken pursuant to the reunification plan. The record also shows the department determined father has appropriately cared for Robert and Matthew, and was having good visits with Andrew and M.M.

As stated above, "[t]he case plan ordered by the court should be appropriate for each individual family based on facts relevant to that family, and should be designed to eliminate the conditions that led to the dependency in the first instance." (*In re Daniel B.* (2014) 231 Cal.App.4th 663, 673.)

In *In re Sergio C.*, the court found the juvenile court erred when it imposed an order requiring a noncustodial father submit to random drug testing as part of the reunification plan because there was minimal to no information suggesting the father had a substance abuse issue, where the only evidence of the father's drug use was unsworn, uncorroborated allegations by the child's mother. (*In re Sergio C.* (1999) 70 Cal.App.4th 957, 960.) Likewise, the court in *In re Basilio T.* found that the juvenile court erred when it imposed a reunification plan that included a substance abuse component in the absence of any evidence that the parents had a substance abuse issue or that a substance abuse problem led to the conditions that caused the dependency. (*In re Basilio T.*, *supra*, 4 Cal.App.4th at pp. 172–173.)

Here, as in *Sergio C.* and *Basilio T.*, the court abused its discretion when it imposed the requirement in the disposition order that father submit to drug and alcohol

testing, as it is unsupported by the record and accordingly arbitrary and capricious. We strike the disposition order's requirement that father submit to drug and alcohol testing from his reunification case plan.

## **DISPOSITION**

The juvenile court's disposition order is stricken as to the requirement that father submit to drug and alcohol testing. In all other respects, the court's order is affirmed.